UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES STEEL CORPORATION, <br><br> Defendant. | Case No. 2:18-CV-127 JD |

## OPINION AND ORDER

A United States Steel plant in Portage allegedly committed numerous environmental violations by releasing pollutants near Lake Michigan. The City of Chicago and the Surfrider Foundation sought to hold U.S. Steel responsible for these violations by bringing individual citizen lawsuits under the Clean Water Act. Several months later, Indiana and the United States government brought a joint enforcement action against U.S. Steel along with a proposed consent decree. Pursuant to statute, the City and Surfrider intervened in that enforcement action as of right and filed complaints in intervention. U.S. Steel now seeks to dismiss the parties' complaints in intervention. The National Parks Conservation Association has separately requested leave to file an *amicus* brief with the Court, opposing the government plaintiffs' proposed consent decree. For the following reasons, the Court grants U.S. Steel's motions to dismiss and grants the National Parks Conservation Association leave to file its *amicus* brief.[1]

---

[1] The Court notes that this case was reassigned from Judge Theresa Lazar Springmann to Judge Jon E. DeGuilio on January 25, 2021.

**I. Factual Background**

U.S. Steel is a corporation whose business includes running a steel manufacturing and finishing facility in Portage, Indiana, known as the Midwest Plant. (DE 32 ¶ 37; DE 33 ¶ 33.) The Midwest Plant is located near Lake Michigan and Indiana Dunes National Park and, as part of its operations, discharges storm and wastewater into an industrial ditch known as Burns Waterway that then, within a few hundred feet, feeds directly into Lake Michigan. (DE 32 ¶ 38; DE 33 ¶ 57.) The City of Chicago ("City"), an intervenor in this action, relies on Lake Michigan to provide drinking water to regional residents. (DE 32 ¶¶ 35–36.) Surfrider Foundation, the second intervenor, is a non-profit corporation with a national reach that aims to protect the world's oceans, waves, and beaches. (DE 33 ¶ 10–11.) The organization has a local chapter in Chicago whose members enjoy surfing and maintaining the beaches in the Northwest Indiana area, including beach area that is directly adjacent to the Midwest Plant and the Burns Waterway. (DE 33 ¶¶ 11–12, 16–17.)

U.S. Steel's discharges into Burns Waterway are subject to a host of governmental regulations that, among other things, require U.S. Steel to ensure regular quantitative and narrative oversight and reporting, maintain its facilities and systems, and advise of violations. (DE 32 ¶¶ 65–129; DE 33 ¶¶ 65–135.) U.S. Steel is alleged to have frequently violated these permit requirements with concerning repercussions for the public, including beachgoers and individuals who get their drinking water from intake facilities in the south Lake Michigan area. (DE 32 ¶¶ 41–52; DE 33 ¶¶ 56–64.)

In response to those violations, the City and Surfrider each took legal action against U.S. Steel under 33 U.S.C. § 1365, the statutory section that allows private parties to sue for violations of the Clean Water Act ("CWA"). Under that section, Surfrider and the City had to

give at least sixty days' notice to U.S. Steel and the relevant environmental regulators within Indiana and the federal government of their intent to bring legal action. 33 U.S.C. § 1365(b)(1)(A). Surfrider gave its notice on November 14, 2017, and the City gave its notice on November 20, 2017. (DE 32 ¶ 8; DE 33 ¶ 6.) No governmental entity acted within sixty days, which led Surfrider to sue U.S. Steel on January 17, 2018, and the City to sue U.S. Steel on January 24, 2018. (DE 32 ¶ 10; DE 33 ¶ 7.) Surfrider's complaint asserted five claims, each premised on federal statute. *Surfrider Foundation v. U.S. Steel*, No. 2:18-cv-020, Dkt. 1 (N.D. Ind. Jan. 17, 2018). The City's complaint asserted six claims, five of which were premised on federal statute and one of which was a claim for negligence. *City of Chicago v. U.S. Steel*, No. 2:18-cv-033, Dkt. 1 (N.D. Ind. Jan. 24, 2018). The citizen suits were subsequently consolidated in March 2018.

The United States and Indiana (together "Government Plaintiffs") subsequently sued U.S. Steel on their own on April 2, 2018, raising eight claims for relief and filing a proposed consent decree between themselves and U.S. Steel that was in the process of undergoing a public comment period at the time. (DE 32 ¶ 11; DE 33 ¶ 8.) The Court stayed Surfrider's and the City's previously filed private citizen suits pending resolution of the Government Plaintiffs' enforcement action and allowed Surfrider and the City to intervene in the government enforcement action pursuant to § 1365(b)(1)(B). Surfrider and the City then filed and subsequently amended complaints in intervention that raised substantially the same claims they raised in their private citizen suits except that Surfrider did not carry over a claim related to stormwater routing.

U.S. Steel soon after brought the motions to dismiss both amended intervenor complaints that are the subjects of this order. (DE 35; 37.) Among other things, U.S Steel argues the

complaints were structured as private citizen complaints under §1365(a)(1) instead of complaints in intervention under § 1365(b)(1)(B) and thus failed to state claims upon which relief could be granted. The case has continued since the motions to dismiss were filed with the Government Plaintiffs subsequently requesting the Court enter their revised consent decree and the intervenors objecting to the decree's approval. (DE 46; 50; 52.) Surfrider has additionally requested a hearing on the Government Plaintiffs' motion to enter the consent decree. (DE 51.)

The National Parks Conservation Association ("NPCA"), which is not a party to this case, has also attempted to weigh in on the revised consent decree by requesting to file an *amicus* brief opposing its entry. (DE 55.) NPCA is a non-profit organization devoted to protecting and enhancing the country's national parks and is interested in this action because of the Midwest Plant's proximity to Indiana Dunes National Park. The organization filed its motion out of concern that the current parties to the case were not properly representing the interests of the national park. The Government Plaintiffs oppose NPCA's request, arguing the parties already present in the case do adequately represent NPCA's position. (DE 60.)

**II. Standards of Review**

*A. Rule 12(b)(6)*

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court construes the complaint in the light most favorable to the plaintiff, accepts the factual allegations as true, and draws all reasonable inferences in the plaintiff's favor. *Reynolds v. CB Sports Bar, Inc.*, 623 F.3d 1143, 1146 (7th Cir. 2010). A complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). That statement must

contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), and raise a right to relief above the speculative level, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, a plaintiff's claim need only be plausible, not probable. *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012). Evaluating whether a plaintiff's claim is sufficiently plausible to survive a motion to dismiss is "'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678).

### B. Leave to file amicus brief

A court presented with a motion for leave to file an *amicus* brief asks whether the brief will assist the court by "presenting ideas, arguments, theories, insights, facts, or data that are not to be found in the parties' briefs." Leave is more likely to be granted when a party is inadequately represented, when the would-be *amicus* has a direct interest in another case that may be affected by a decision in the current case, or when the *amicus* "has a unique perspective or specific information that can assist the court beyond what the parties can provide." *Voices for Choices v. Ill. Bell. Tel. Co.*, 339 F.3d 542, 545 (7th Cir. 2003) (citing *Nat'l Org. for Women, Inc. v. Scheidler*, 223 F.3d 615, 616–17 (7th Cir. 2000)). If an *amicus* brief only presents a few new citations and slightly more analysis but largely covers the same ground as the parties' briefs, the brief is not sufficiently unique to meet the Seventh Circuit's standard. *Id.* Ultimately, allowing a non-party to file an amicus brief is "a matter of judicial grace" and is thus left to the discretion of the court. *Scheidler, Inc.*, 223 F.3d at 616.

**III. Discussion**

   *A. Motions to dismiss*

U.S. Steel premises both motions to dismiss on its contention that Surfrider and the City have stepped beyond the statutory boundaries they are held to as intervenors in this government enforcement action. (DE 36 at 11; DE 38 at 12–13.) Both Surfrider and the City counter that U.S. Steel has argued for an overly narrow reading of a party's rights under § 1365(b)(1)(B) and that they have properly pled their complaints in intervention consistent with their status as intervenors under § 1365(b)(1)(B). (DE 39 at 13–14; DE 40 at 8.) While the Court agrees that U.S. Steel attempts to overly restrict the intervenors' ability to plead claims, it also finds that the intervenors did plead complaints in intervention that are inconsistent with their roles in this government enforcement action.

The disputes between U.S. Steel and the intervenors that underly U.S. Steel's motions to dismiss center on 33 U.S.C. § 1365 and specifically § 1365(a) and (b). Section 1365 contains the procedures and limitations for non-government parties seeking to involve themselves in CWA litigation. Section 1365(a) allows private citizen suits under the CWA with the following parameters:

> Except as provided in subsection (b) of this section and section 1319(g)(6) of this title, any citizen may commence a civil action on his own behalf –
> (1) against any person (including (i) the United States, and (ii) any other governmental instrumentality or agency to the extent permitted by the eleventh amendment to the Constitution) who is alleged to be in violation of
>    (A) an effluent standard or limitation under this Act or
>    (B) an order issued by the Administrator or a State with respect to such a standard or limitation, or
> (2) against the Administrator where there is alleged a failure of the Administrator to perform any act or duty under this chapter which is not discretionary with the Administrator . . . .
> The district courts shall have jurisdiction . . . to enforce such an effluent standard or limitation, or such an order, or to order the Administrator to perform such act or duty, as the case may be, and to apply any appropriate civil penalties . . . .

6

33 U.S.C. § 1365(a). Section 1365(b) then imposes limitations on a party's ability to proceed under § 1365(a) and also provides citizens with the ability to intervene in an ongoing government enforcement action:

> No action may be commenced –
> (1) under subsection (a)(1) of this section –
>> (A) prior to sixty days after the plaintiff has given notice of the alleged violation (i) to the Administrator, (ii) to the State in which the alleged violation occurs, and (iii) to any alleged violator of the standard, limitation, or order, or
>> (B) if the Administrator or State has commenced and is diligently prosecuting a civil or criminal action in a court of the United States, or a State to require compliance with the standard, limitation, or order, but in any such action in a court of the United States any citizen may intervene as a matter of right . . . .

33 U.S.C. § 1365(b).

As is clear from their text, § 1365(a) and § 1365(b) place parties into different roles as enforcers of environmental regulations. Under § 1365(a), a private citizen, defined as "a person or persons having an interest which is or may be adversely affected," 33 U.S.C. § 1365(g), can bring its own case alleging violations and thus, to a large extent, control the scope of its claims. *See* 33 U.S.C. § 1365(a). Under § 1365(b), that same private citizen is allowed to intervene in a government enforcement case that has already begun, that the citizen did not bring, and that is controlled by the government parties that originally filed the case. *See* § 1365(b). Federal courts have recognized these different roles with the Seventh Circuit holding that an intervening party under §1365(b)(1)(B) "is not supposed to be a full-fledged independent litigator if the state or federal government diligently prosecutes a suit," *United States v. Metro. Water Reclamation District. of Greater Chi.*, 792 F.3d 821, 825 (7th Cir. 2015) ("*MWRD*"), and the Supreme Court holding that citizens intervening under § 1365(b)(1)(B) are supposed to "supplement rather than

7

supplant" public litigation, *Gwaltney of Smithfield, Ltd. v. Chesapeake Bay Found., Inc.*, 484 U.S. 49, 60 (1987). There is thus a clear limitation imposed when a party is participating in a case as a § 1365(b)(1)(B) intervenor that is not present when the party is proceeding as a private citizen under § 1365(a).

The central question for the resolution of U.S. Steel's motions to dismiss is whether Surfrider and the City exceeded that limitation when they filed their complaints in intervention. A party proceeding under § 1365(b)(1)(B) only has four rights it can exercise after it has intervened in a government enforcement action, according to the Seventh Circuit. The party has the right to: 1) introduce evidence if the enforcement case goes to trial; 2) object to a proposed settlement; 3) appeal if the party thinks the government has accomplished too little; and 4) enforce any judgment, just as the government can do. *MWRD*, 729 F.3d at 824–25. These four rights recognize the "more modest role" an intervenor plays under § 1365(b)(1)(B), *see id.* at 825, and, when combined with federal precedent that suggests a § 1365(b)(1)(B) intervenor plays a secondary role to government plaintiffs in CWA enforcement actions, *see Gwaltney*, 484 U.S. at 60–61; *Friends of Milwaukee's Rivers and Lake Mich. Fed'n v. Milwaukee Metro. Sewage Dist.*, 382 F.3d 743, 763–64 (7th Cir. 2004), those rights indicate that § 1365(b)(1)(B) intervenors must tailor their activity to the enforcement action in which they are intervening. Intervenors are not, as U.S. Steel argues, required to only plead claims that specifically object to a proposed consent decree though. (DE 36 at 6–7; DE 38 at 7–8). The requirement is instead that they tailor their claims to the government plaintiffs' powers to obtain relief and do so without raising claims that go beyond the scope of the enforcement action the government plaintiffs already established through their own claims. *See, e.g.*, *Metro. Water Reclamation Dist. of Greater Chi.*, No. 11-cv-8859, Dkt. 48 (N.D. Ill Aug. 9, 2012) ("ELPC Complaint"). The

intervenors did not abide by that requirement in their complaints in intervention and their claims thus must be dismissed.

First, both Surfrider and the City impermissibly relied on § 1365(a)(1) in raising each of their federal claims. Both intervenors, in each federal claim, specifically accused U.S. Steel of permitting violations that were "actionable under Section 505 of the CWA, 33 U.S.C. §1365(a)(1)," before concluding each claim with the statement that the violations detailed in the claim subjected U.S. Steel to injunctive relief and civil penalties "pursuant to Section 309 and 505 of the CWA, 33 U.S.C. §§ 1319 and 1365." (DE 32 at 30–35; DE 33 at 33–36.) Nowhere did the intervenors indicate they recognized they had to bring their claims pursuant to §1365(b)(1)(B). Instead, their federal claims imply they were improperly duplicating their previously filed § 1365(a)(1) private citizen claims and impermissibly requesting injunctive relief and civil penalties separate and apart from the relief the Government Plaintiffs had already requested in the enforcement action (DE 1 at 27).

Surfrider and the City each responded that, as citizens, they were required to plead claims based on violations they could have pursued in private citizen complaints, which are enumerated in § 1365(a)(1). (DE 39 at 7–9; DE 40 at 3–5.) But that is incorrect. They are citizens intervening under § 1365(b)(1)(B) and, because of that, they are limited to raising claims upon which the Government Plaintiffs could seek relief. *See MWRD*, 792 F.3d at 824–25. While many of the violations the intervenors described in their federal claims are actionable in both a § 1365(a)(1) citizen suit and by government plaintiffs in an enforcement action, if the intervenors want to raise claims related to those violations in their capacities as intervenors in this government enforcement case, they must specifically tailor their complaints in intervention to make clear that they are asserting their claims pursuant to the governments' power to pursue relief under § 1319

9

and their own power to pursue that relief alongside the governments under § 1365(b)(1)(B). *See, e.g.*, ELPC Complaint. Because the intervenors did not do that and instead tied their federal claims to § 1365(a)(1), the Court cannot grant relief on those claims and each of the intervenors' federal claims must be dismissed.

Dismissal of each federal claim leaves only the City's claim for negligence, which also must be dismissed. Although the City did not rely on its power under § 1365(a)(1) to raise that claim, the negligence claims still falls outside the scope of this case because the City cannot tie it to any relief the Government Plaintiffs are seeking in this case. Thus, the City could not exercise any of the rights a §1365(b)(1)(B) intervenor has to see that claim resolved here. *See MWRD*, 792 F.3d at 824–25. The Court notes that while the negligence claim is outside the scope of this case and is thus a claim upon which relief cannot be granted here, the City brought the same claim in its prior-filed, and still-pending, private citizen suit and still could have the opportunity to litigate the merits of the claim once the stay over that case is lifted.

While Surfrider and the City failed to raise claims upon which relief could be granted, the Court finds the intervenors should not be dismissed from the case but instead should be given an opportunity to amend their complaints. Both parties, as U.S. Steel admits (DE 36 at 2; DE 38 at 2), were properly allowed to participate in this case as of right under § 1365(b)(1)(B) and they should be allowed to continue participating. Additionally, while at least one court has found that a §1365(b)(1)(B) intervenor's prior lawsuit raising substantially similar claims against the same party was reason to dismiss those claims in the intervenor's complaint in intervention, *United States v. Doe Run Res. Corp.*, No. 4:10cv1895 JCH, 2011 U.S. Dist. LEXIS 49911 (E.D. Mo. May 10, 2011), the Court finds Surfrider and the City are not so limited here. Unlike the intervenor in *Doe Run* whose prior suit was not premised primarily on § 1365 and had been

proceeding for some time before intervention, Surfrider and the City have almost entirely pursued their claims under § 1365 and intervened in this case soon after filing their citizen suits. Additionally, no party has provided legal authority that a prior citizen suit under § 1365(a)(1) requires restricting the claims the same party can subsequently bring under § 1365(b)(1) to resolve the same violations. Further, the Court does not find that allowing the parties to plead claims under § 1365(b)(1)(B) while their similar § 1365(a)(1) claims are stayed represents a risk to judicial economy, particularly because the claims are likely to be resolved within this case and will not have to be reconsidered when the stay on the private suits is lifted. Thus, Surfrider and the City will have leave to amend their complaints to properly plead claims given their status in this case as § 1365(b)(1)(B) intervenors.

### B. Motion to file *amicus* brief

Moving to the separate request from the National Parks Conservation Association to file an *amicus* brief in opposition to the proposed consent decree, the Court must determine whether NPCA's brief would assist the Court by presenting unique ideas or insight not found in the existing parties' briefs. NPCA argues there is no party in the action that can offer its unique perspective tied to protecting the Indiana Dunes National Park from harm linked to violations at the Midwest Plant. (DE 55 at 4–5.) It also indicates it would raise three arguments in its brief: 1) that the consent decree fails to adequately account for the heightened public interest in protecting the national park; 2) that the consent decree fails to recover adequate past and future potential natural resources damages to the national park; and 3) that the proposed civil penalty associated with the consent decree provides insufficient deterrent value to protect the national park. (DE 55-1.) The Government Plaintiffs counter by asserting the NPCA's arguments are already

represented in revisions the Government Plaintiffs made to their consent decree based on NPCA's public comments, that the intervening parties opposing the consent decree make substantially similar arguments, and that allowing the *amicus* brief would pose an additional burden to the existing parties, which may feel it necessary to respond. (DE 60 at 4–5.)

First, the Court does not find that NPCA's previous opportunities to comment on the Government Plaintiffs' proposed consent decree precludes the organization from filing an *amicus* brief with the Court. While it is true that NPCA has already had the opportunity to provide comments during the consent decree process and the Government Plaintiffs have filed documents with the Court to explain how they responded to those comments, it is also true that those prior comments served a different purpose than the *amicus* brief would here. The prior comments were meant to inform the Government Plaintiffs about NPCA's opinions regarding the proposed consent decree and to potentially convince the Government Plaintiffs to revise the decree before asking the Court to enter it. NPCA's *amicus* brief, if the other factors persuade the Court it should be filed, would instead be directed to the Court itself and serve the purpose of informing the Court about NPCA's opinion on the proposed consent decree to potentially convince the Court to decline to enter the decree. Thus, the Court finds that NPCA's prior comments submitted to the Government Plaintiffs do not serve the same purpose as the *amicus* brief and do not have preclusive effect.

Second, the Court finds that NPCA does have a unique perspective in this matter and can provide specific information that will assist the Court. Much of the Government Plaintiffs' opposition to the *amicus* brief lies in its contention that the brief would simply rehash already-lodged arguments. The Government Plaintiffs first allege that NPCA's argument that the consent decree is not protective enough of the heightened interest society has in protecting the country's

national parks is already found in Surfrider's filing in opposition to the consent decree. (DE 60 at 4.) While Surfrider does mention Indiana Dunes National Park in its filing, it is for a different reason, not to discuss the damage to the park's natural resources, like NPCA, but instead to discuss the potential harm that could befall Surfrider's members who make use of the waters and beaches connected with the park. (DE 50 at 9–10.) NPCA also differentiates its perspective through its second argument in its brief in which it advocates for stipulated damages for future environmental violations that could harm the national park and specifically disputes the findings of a National Parks Service expert that were used in calculating the proposed damages to be paid. (DE 55-1 at 8–9.) Finally, NPCA presents a different theory related to the proposed civil penalty to be levied against U.S. Steel through the consent decree in its third argument than any party currently in the case. (DE 55-1 at 10–11.) NPCA would thus provide a unique, helpful perspective for the Court to consider while determining the outcome of this case.

      Third, the unique perspective NPCA would provide to the Court outweighs any minor delay in the case or burden on the existing parties. The Court understands that "the filing of an *amicus* brief imposes a burden of study and the preparation of a possible response on the parties," *see Scheidler*, 223 F.3d at 616, but the Court believes NPCA is not already adequately represented in this action and that the organization's perspective, drawn from its mission to protect Indiana Dunes National Park, is sufficiently unique and helpful to the Court to warrant leave to file an *amicus* brief. *See Voices for Choices*, 339 F.3d at 545. Thus, relying on its discretion to grant such requests, the Court will allow NPCA to file its *amicus* brief in opposition to the proposed consent decree and will additionally allow each existing party the opportunity to respond to the brief following NPCA's filing.

**IV. Conclusion**

For the foregoing reasons, the Court GRANTS United States Steel's motions to dismiss (DE 35; DE 37) with leave to the Surfrider Foundation and the City of Chicago to amend their complaints in intervention consistent with this order and the requirements for a party intervening under § 1365(b)(1)(B). In light of the Court's grant of the motion to dismiss Surfrider's complaint in intervention, the Court also DENIES as moot Surfrider's motion for a hearing (DE 51) with leave to refile after amendment of its complaint. Additionally, the Court GRANTS the National Parks Conservation Association's motion for leave to file an *amicus* brief (DE 55) and DIRECTS the Clerk to file the attached amicus brief as a separate docket entry (DE 55-1).

SO ORDERED.

ENTERED: March 8, 2021

/s/ JON E. DEGUILIO
Chief Judge
United States District Court