UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES STEEL CORPORATION, <br><br> Defendant. | Case No. 2:18-CV-127 JD |

**OPINION AND ORDER**

Defendant, United States Steel Corporation ("U.S. Steel") has filed an objection, pursuant to 28 U.S.C. § 636(b)(1) to the proposed Report and Recommendation prepared by the Magistrate Judge in this case. (DE 120.) For the reasons set forth in this motion, the objection will be overruled.

**A. Background**

This case, and its companion cases, weave a long and fairly complex history. That history is a significant contributor to this dispute.

The story of this case begins in 2017 at U.S. Steel's Midwest Plant in Portage, Indiana. In April of that year, the plant released a dangerous amount of hexavalent chromium into Lake Michigan. This environmental incident resulted in a series of lawsuits against U.S. Steel, including this one. The full details of this incident and subsequent litigation are fully summarized in the Court's order entering the judgment in this case. (*See* DE 105).

After the 2017 incident at the Midwest Plant, The Surfrider Foundation and the City of Chicago (collectively "Intervenor-Plaintiffs"), filed suit against U.S. Steel in January 2018 for

violating the Clean Water Act pursuant to the Act's "citizen suit" provisions ("The Citizen Suit").[1] The United States and the State of Indiana filed their own case, the instant matter, against U.S. Steel in April 2018 ("The Enforcement Case"). Surfrider and Chicago then agreed to stay their case while the Enforcement Case proceeded, and later joined the Enforcement case as Intervenor-Plaintiffs. The Intervenor-Plaintiffs attempted to consolidate their case, the Citizen Suit, with the Enforcement Case but the motion was denied on June 28, 2019. The Enforcement Case ultimately concluded with a Revised Consent Decree which the Court entered on September 2, 2021, over the objection of the Intervenor-Plaintiffs.

After the Enforcement Case concluded, U.S. Steel moved to lift the stay in the Citizen Suit so they could move to dismiss. The Intervenor-Plaintiffs, unsatisfied with the conclusion of the Enforcement Case, also moved to lift the stay so they could file an amended complaint and continue their litigation against U.S. Steel. In the Citizen Suit the Intervenor-Plaintiffs alternatively asked for the Court to declare them prevailing parties which would entitle them to recover fees and costs pursuant to Federal Rule of Civil Procedure 54.

The Court lifted the stay, received briefing on the motion to dismiss, and ultimately granted the motion on September 22, 2022, finding *res judicata* precluded further litigation of the Intervenor-Plaintiff's claims. The Court also held that there was no legal basis for declaring the Intervenor-Plaintiffs prevailing parties *in the Citizen Suit* but did not reach the issue of whether they could be considered prevailing parties entitled to fees *in the Enforcement Case*.

The Intervenor-Plaintiffs then filed a motion in this case seeking leave to file a petition for fees pursuant to Federal Rule of Civil Procedure 54, arguing that while their petition was facially untimely, they were still entitled to bring it. (DE 115.) The Intervenor-Plaintiffs argued

---

[1] *The Surfrider Foundation et al. v. United States Steel Corporation*, No. 2:18-CV-20-JD-APR.

that their motion was timely because it was filed within fourteen days of entry of judgment in the Citizen Suit and under the Clean Water Act their fee request deadline was based on the conclusion of the underlying dispute. In the alternative, they argued that if their filing was untimely, the untimeliness was excused because the Citizen Suit remained pending and their right to recover litigation costs only became fixed once the underlying claims in this complex web of litigation were resolved.

The Court referred the motion for leave to seek fees to the Magistrate Judge to prepare a report and recommendation. The Magistrate Judge has filed that report and recommended that the Court allow the Intervenor-Plaintiffs to file a petition for fees and supporting brief.

**B. Legal Standard**

The standard of review for a Magistrate Judge's report and recommendation is set by statute:

> A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28 U.S.C. § 636(b)(1)(C).

**C. Discussion**

U.S. Steel's motion agrees with many of the findings in the Magistrate Judge's report and recommendation, such as the description of the facts and the rejection of the Intervenor-

Plaintiffs' preliminary legal argument for why their fee request was timely. The Intervenor-Plaintiffs do not object to these portions of the recommendation either. As such, the Court will accept those portions of the report and focus its discussion on the sole dispute in this case, whether the Intervenor-Plaintiff's untimely request constitutes excusable neglect that allows them to pursue their untimely request.

Under Federal Rule of Civil Procedure 6, "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time: … on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1); *see also Crue v. Aiken*, 370 F.3d 668, 681 (7th Cir. 2004) (applying Rule 6 standard for extensions to Rule 54). As the Magistrate Judge correctly noted, to determine whether the neglect was excusable, the Court must "[t]ake into consideration all relevant circumstances including the danger of prejudice to the non-moving party, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Marquez v. Mineta*, 424 F.3d 539, 541 (7th Cir. 2005) (internal quotations and citations omitted).

Further, if the delay was not in good faith, then the extension may be denied. *Anderson v. LaSalle Steel Co.*, 2009 WL 857511, at *6 (N.D. Ind. 2009) (citing *Russell v. City of Milwaukee*, 338 F.3d 662, 668 (7th Cir. 2003)). This District's Local Rules also require that any motion for an extension of time must either state there is no objection to the extension or describe the requesting party's efforts to get the opposing parties to agree to the extension if there is an objection. N.D. Ind. L.R. 6-1. Whether the neglect was excusable requires an analysis of prejudice to the non-moving party, the length of the delay and its potential impact on the

proceedings, the reason for the delay, and whether the movant acted in good faith. *Marquez*, 424 F.3d at 541.

U.S. Steel first objects to the Magistrate Judge's conclusion that the Intervenor-Plaintiff's untimely filing can be considered "neglect."

"Neglect" is the failure to meet a deadline because of intervening circumstances beyond the party's control as well as inadvertence, mistake, or carelessness. *Pioneer Invs. Servs. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 388 (1993). Generally, "inadvertence, ignorance of the rules, or mistakes in construing the rules do not constitute neglect." *Ardisam, Inc. v. Ameristep, Inc.*, 343 F. Supp. 2d 726, 729 (W.D. Wis. 2004) (quoting *Pioneer*, 507 U.S. at 392).[2] That said, the Supreme Court has cautioned that "excusable neglect" under Rule 6(b) is a "somewhat elastic concept" and is not limited strictly to omissions caused by circumstances beyond the control of the movant. *Pioneer*, 507 U.S. at 392.

The Magistrate Judge concluded that the Intervenor-Plaintiff's delay was based on a mistaken interpretation of law which constitutes neglect in this instance. The Magistrate Judge based his conclusion on the unique procedural posture of this case, and the language Magistrate Judge Rodovich's order used denying consolidation of the Citizen Suit with this action stating that the Intervenor-Plaintiff's "rights [would be] protected by their intervenor status." *Surfrider et al. v. U.S. Steel Corp.*, 2:18-cv-20-JD-APR, DE 37 at p.6. (June 28, 2019) (Order of Rodovich, J. denying motion to consolidate). The Magistrate Judge also considered the legal citations which Intervenor-Plaintiffs provided awarding fees to citizen plaintiffs in various iterations of party

---

[2] U.S. Steel argues that the Magistrate Judge erred in relying on the "generic language" of *Ardisam* about neglect being a somewhat "elastic concept." (DE 120 at 6.) It is not erroneous to rely on the precedent of the United States Supreme Court, being quoted by a Circuit Court, characterizing a legal concept. Moreover, U.S. Steel has not provided more specific governing precedent for this unique situation. Therefore, the Magistrate Judge, and this Court, appropriately rely on the traditional legal reasoning practice of applying a general rule to specific facts.

5

status. *See e.g.*, *Sierra Club v. Hamilton Cty. Bd. of Cty. Comm'rs*, 504 F.3d 634, 645 (6th Cir. 2007) (awarding fees to entity which was both plaintiff in citizen suit and intervenor in enforcement suit); *Atl. States Legal Found, Inc. v. Eastman Kodak Co.*, 933 F.2d 124, 128 (2d Cir. 1991) (allowing citizens to seek fees because "the existence of the citizen suit was a motive for the polluter's settlement" in a separate enforcement action); *U.S. E.P.A. v. City of Green Forest*, 921 F.2d 1394, 1402 (8th Cir. 1990) (allowing citizen to seek an award of fees when intervention was denied and that denial "precluded the citizens from seeking their fees").

The Court agrees with the Magistrate Judge. On this unique set of facts and circumstances, the Intervenor-Plaintiff's misunderstanding of the deadline for seeking fees is best characterized as neglect. This appears to be a novel circumstance involving parallel litigation and Rule 54, and the Intervenor-Plaintiffs made an ultimately incorrect but not outlandish decision on how to proceed. At base, there is clear reasoning behind the idea that if a party can only seek fees if they prevail, then they must wait until the underlying dispute is concluded to see if they even qualify as a prevailing party. Further, in the context of parallel litigation over the same alleged incident, it is not a wild notion to conclude the underlying dispute is not resolved until both cases have concluded with a judgment.

U.S. Steel's argument to the contrary is unpersuasive. U.S. Steel forcefully, but speculatively, asserts that the Intervenor-Plaintiff's choice was a strategic decision rather than an act of neglect. U.S. Steel provides no reasoning or evidence to back up this claim, and seems to bristle at the notion they should provide any.[3] The Court independently cannot discern any strategic advantage the Intervenor-Plaintiffs garner from delaying pursuit of their fees.

---

[3] *See* DE 120 at 7 ("The Recommendation errs in implying that U.S. Steel needed to provide analysis or facts to dispute the Intervenors' subjective beliefs about what they understood the law to be, and there is no precedential support for that position."). If U.S. Steel seeks to disprove the Intervenor-Plaintiff's characterization of

U.S. Steel also argues that the Magistrate Judge inappropriately *sua spotne* found that a mistake of law constituted neglect although that was not a claim asserted by the Intervenor-Plaintiffs. This argument is without merit. The Intervenor-Plaintiff's argued they were entitled to seek fees based on an interpretation of the Clean Water Act which made their request timely. (DE 115 at 3.) However, they also invoked Rule 6(b) in seeking permission to file their request for fees and applied the standard for excusable neglect. (*Id.* at 4, 5–7.) They may have only used the precise phrase "excusable neglect" in their reply brief, and may not have expressly formulated their argument as legal error constituting excusable neglect. But, to deny the motion on such a technical ground requires an excessively narrow reading of the brief. The idea that any legal interpretation error should be reviewed as excusable neglect, is plainly the thrust of the Intervenor-Plaintiffs' argument and the Magistrate Judge did not raise the issue *sua sponte*.

The Court now turns to whether the neglect was excusable. Determining whether neglect was excusable requires an analysis of prejudice to the non-moving party, the length of the delay and its potential impact on the proceedings, the reason for the delay, and whether the movant acted in good faith. *Marquez*, 424 F.3d at 541.

The Magistrate Judge imputed prejudice to U.S. Steel and the parties agree with that conclusion. The Court agrees with this conclusion for the same reason. The Intervenor-Plaintiffs took over a year to enforce their right to seek litigation costs in this case, and made no post consent decree filings indicating they would attempt to seek fees. The Magistrate Judge also concluded there would be no adverse impact on the proceedings because all other judicial proceedings in this case are concluded. The parties do not dispute this conclusion. The Court

---

their filing failure as a good faith error, U.S. Steel needs to support their argument and they may not negate an opposing party's representation of their subjective understanding by a blanket denial.

agrees with this conclusion as well given there are no remaining proceedings to adversely impact.

The dispute underlying this objection is whether the dismissal of the Citizen Suit triggered a right in this suit to file a motion for fees, which in addition to being an aspect of whether the delay was due to neglect, goes to both factors of whether the delay was reasonable and whether this belated filing was in good faith. The Magistrate Judge held that because the delay was a result of neglect, it was a reasonable delay and that the Intervenor-Plaintiffs had acted in good faith in making their motion.

U.S. Steel argues that this case is "no different from any other where a party misses a deadline with no legal support for doing so" and cites to a case from a sister court within the Circuit denying an extension. (DE 120 at 8.) *Enhorn v. Abandoned Shipwreck*, No. 00-C-1086, 2001 U.S. Dist. LEXIS 28601, at *13 (E.D. Wis. Nov. 27, 2001) (applying Rules 59(e) and 60(b)). The Court does not find this characterization persuasive. Procedurally, this case is rather complex because it involves a parallel set of complex environmental lawsuits spanning the course of several years with overlapping plaintiffs. Further, the fact neither the parties nor the Court were able to find specific precedent for this situation suggests it is a novel and unique issue.

Lastly, *Enhorn* is not persuasive authority as the district judge's decision was reversed by the Seventh Circuit. *Enhorn v. Sunken Vessel Known as the Roscinco*, 294 F.3d 856, 859–60 (7th Cir. 2002).[4] In reversing the district judge, the Circuit court expressly noted that the law

---

[4] The Court will note that the Seventh Circuit decision reversed the district court's grant of summary judgement entered on September 26, 2001. The order cited by U.S. Steel is the motion to reconsider that judgment which was entered on November 27, 2001. The Seventh Circuit did not review the motion to reconsider, but nonetheless rejected its reasoning in reversing the underlying order for summary judgment.

8

governing that case, admiralty law, was a particularly complex "body of law whose arcane rules sometimes befuddle even grizzled veterans" which merited an expectation that the attorneys involved cannot be expected to handle such matters flawlessly. *Id.* at 859. The underlying law here, civil procedure and the Clean Water Act, is not as complex as admiralty law. Nonetheless, the path for applying that law to these particular circumstances is less than straightforward and seemingly novel which merits affording the parties involved a degree of grace.

U.S. Steel disagrees that the Intervenor-Plaintiffs proceeded in good faith but fails to proffer substantive argument on this point. U.S. Steel asserts that the Intervenor-Plaintiffs made a "conscious strategic decision" to wait until the resolution of the Citizen Suit to seek fees. As previously discussed, U.S. Steels' argument is largely speculative. U.S. Steel offers no explanation of how delaying seeking fees was in the Intervenor-Plaintiffs' strategic interest, or that is a more plausible explanation than misapprehending the law to require them to wait until the Citizen Suit had concluded.

U.S. Steel also notes that the Intervenor-Plaintiffs waited until the last day of the "renewed" fourteen-day deadline to confer with U.S. Steel about an extension as required by Local Rule 6-1. The Intervenor-Plaintiffs then filed the motion two hours later. U.S. Steel suggests this is indicative of strategic decision making as opposed to neglect. The Court is unpersuaded by this for three reasons. First, this has limited probative value on the decision, a year prior, to not seek fees when the Enforcement Case concluded. Second, it is somewhat regrettable but hardly unusual for attorneys in federal practice to enter their filings close to the deadline. Third, the Court fails to see what strategic advantage is conferred on Intervenor-Plaintiffs from timing their actions this way.

U.S. Steel also makes an argument that no precedent supports the Magistrate Judge's recommendation. This is inaccurate. While no precedent governs this unique situation, despite the efforts of the parties, the Magistrate Judge, and this Court to locate some, as noted above there is generally applicable precedent about how to apply Rule 6 in the fees context.

Finally, U.S. Steel grimly foretells that if the Court allows the Intervenor-Plaintiffs to seek fees in this case it will fatally undermine the enforceability of deadlines in this District. The Court disagrees for several reasons. First, this is a unique and seemingly novel set of circumstances which does not appear likely to repeat. Second, this situation is largely a result of a misapprehension of law which will be foreclosed by this order. The Magistrate Judge's recommendation conclude that the Intervenor-Plaintiff's understanding of the Clean Water Act allowed for them to seek fees was wrong. (DE 119 at 5–7.) In adopting that portion of the Recommendation the Court will be foreclosing any future litigants from bringing that argument in good faith, which precludes them from seeking a Rule 6 extension on the basis of that misinterpretation. *See Anderson*, 2009 WL 857511, at *6. Third, the Court will confine its holding, permitting the Intervenor-Plaintiffs to seek fees, to the facts of this case based upon the unique facts and particular equitable interests at play in applying Rule 6.

**D. Conclusion**

Accordingly, the objection to the Report and Recommendation is OVERRULED. (DE 120). The Court ADOPTS the report and recommendation of the Magistrate Judge, GRANTING in part the Intervenor-Plaintiff's motion for leave to file a motion under Rule 54 for fees and costs. (DE 118.) The Intervenor-Plaintiffs may file their motion for fees and costs within

fourteen days of the entry of this order, U.S. Steel shall have fourteen days from that deadline to file a response, and the Intervenor-Plaintiffs shall then have seven days to file their reply.[5]

SO ORDERED.

ENTERED: August 7, 2023

/s/ JON E. DEGUILIO
Judge
United States District Court

---

[5] As the issue has not been briefed, the Court takes no position on this order as to whether the Intervenor-Plaintiffs can be considered prevailing parties and are entitled to fees. This order merely allows the Intervenor-Plaintiffs to make their request for fees and marshal appropriate legal support and argument explaining why they believe they are entitled to fees.