IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, *et.al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 2:18-cv-00127 |
| v. | ) | |
| | ) | |
| U. S. STEEL CORPORATION | ) | |
| | ) | |
| Defendant. | ) | |

**BRIEF IN SUPPORT OF THE APPLICATIONS FOR ATTORNEYS' FEES AND
COSTS BY THE SURFRIDER FOUNDATION AND THE CITY OF CHICAGO**

Pursuant to the fee-shifting provision of the Clean Water Act ("CWA"), 33 U.S.C. § 1365(d) and Federal Rule of Civil Procedure 54(d), the Surfrider Foundation ("Surfrider") and the City of Chicago ("City") (collectively "Plaintiffs-Intervenors") respectfully move the Court to award reasonable attorneys' fees and costs in this case ("Enforcement Case"), as well as certain fees and costs incurred in the parallel citizen suit, *Surfrider Found. v. U. S. Steel Corp.*, No. 2:18-cv-00020 (consolidated with 2:18-cv-00033 ("City's Suit")) (initially "Surfrider's Suit," then the "Citizen Suit" when consolidated), because Plaintiffs-Intervenors are substantially prevailing parties. As the United States and State of Indiana (collectively, "Governments") have acknowledged, *see* Gov't Reply in Supp. of Mot. to Enter Revised CD, US Dkt. 65 ("US Dkt. 65") at 11-12,[1] Plaintiffs-Intervenors significantly contributed to effecting meaningful revisions to the initial Proposed Consent Decree ("Proposed CD"). This Court determined, in dismissing the Citizen Suit, that the Revised Consent Decree ("Revised CD") resolved all of Plaintiffs-Intervenors' CWA claims, including their requests for injunctive relief and civil penalties. Thus,

---

[1] Citations to "US Dkt." Refer to the Enforcement Case, *U.S., et. al. v. U. S. Steel Corp.*, 2:18-cv-00127. "Citizen Dkt." refers to the Surfrider's/Citizen Suit, *Surfrider Found. v. U. S. Steel Corp.*, 2:18-cv-00020. Citations to "City Dkt." refer to filings in the City's Suit, *City of Chi. v. U. S. Steel Corp.*, 2:18-cv-00033.

Plaintiffs-Intervenors ask this Court to recognize them as substantially prevailing parties and award them attorneys' fees and costs, plus interest, for their significant efforts leading to the Revised CD.

**BACKGROUND & PROCEDURAL HISTORY**

Plaintiffs-Intervenors' advocacy in this litigation spanned the Citizen Suit and this Enforcement Case. From their initial Notices of Intent to Sue ("NOIs") through entry of the Revised CD, Plaintiffs-Intervenors continuously advocated for remedies that would adequately address Defendant's pattern of harmful violations. The key points at which their involvement played a critical role in addressing Defendant's violations are described below.

On November 13, 2017, Surfrider initiated litigation against Defendant by serving an NOI ("Surfrider's NOI") for Defendant's harmful, ongoing CWA violations. *See* Citizen Dkt. 1-1. On November 20, 2017, the City served its NOI ("City's NOI") for the same violations. *See* City Dkt. 1-1. The United States Environmental Protection Agency ("USEPA") and Indiana Department of Environmental Management ("IDEM") failed to file within the statutory sixty-day periods; accordingly, Surfrider and the City filed suits in this Court on January 17 and 24, 2018, respectively. *See* Compl., Citizen Dkt. 1 ("Surfrider Complaint" or "Citizen Dkt. 1"); Compl. City Dkt. 1 ("City Complaint" or "City Dkt. 1"). On March 9, 2018, Defendant admitted to fifty-four violations alleged by Surfrider. *See* Answer to Surfrider Compl., Citizen Dkt. 17 ("Citizen Dkt. 17") ¶¶ 78, 82, 85, 92, 96, 104, 106, 121–22. On March 16, 2018, Defendant admitted to many violations alleged by the City. *See* Answer to City Compl., Citizen Dkt. 18 ("Citizen Dkt. 18") ¶¶ 72, 76, 79, 86, 90, 91, 95, 99, 102, 104 115. On April 2, 2018, the Governments filed this Enforcement Case, alleging CWA violations that significantly overlapped with those alleged by Plaintiffs-Intervenors and that were admitted by Defendant. *Compare* Citizen Dkt. 1 *and* City Dkt.

1 *with* Gov'ts Compl., US Dkt. 1. The Governments also filed a Proposed CD. *See* Gov'ts Proposed CD, US Dkt. 2-1.

Recognizing that the Proposed CD was inadequate to remedy Defendant's violations, Plaintiffs-Intervenors pursued multiple avenues to improve it, including proposing revisions via sixty-eight pages of "detailed, substantive" public comments. *See* Gov't Resp. to Mots. to Intervene, Dkt. 17 ("US Dkt. 17") at 8; *see also* Gov't Mem. in Supp. of Mot. to Enter Revised CD, Dkt. 47 ("US Dkt. 47") at 8 n.2. The proposed revisions included enhancements to Defendant's Operations and Maintenance Plan ("O&M Plan"), improving spill notification procedures, requiring a Supplemental Environmental Project (a/k/a an environmentally beneficial project, or "EBP"), and increasing the civil penalty figure to adhere to federal guidelines. *See* US Dkt. 47-5 at 105-246.

In an April 13, 2018 letter to USEPA and IDEM, Plaintiffs-Intervenors identified flaws in the Proposed CD, including the lack of an EBP and vagueness of the spill notification plan. *See* Exhibit DD, April 2018 Letter, at 2. Surfrider and the City both submitted public comments on July 6, 2018, describing further deficiencies, including the deficient civil penalties and vague O&M plan. *See* US Dkt. 47-5 at 105-246. Meanwhile, Surfrider, the City, and the Governments remained "in communication . . . before, during, and after the public comment period for the Proposed CD." US Dkt. 17 at 7, including "multiple telephone conferences and email communications regarding substantive technical and legal issues, as well as the status of the Governments' public comment review process and the litigation/settlement status of the citizen suit." *Id.* at 8.

Plaintiffs-Intervenors also intervened in this Enforcement Case. In their April 13, 2018, letter to USEPA and IDEM, Plaintiffs-Intervenors noted that "it is critical to include our

perspective as parties to achieve an appropriate, efficient resolution." Ex. DD at 2. On December 13, 2018, Plaintiffs-Intervenors successfully intervened, seeking injunctive relief and civil penalties, to help hold Defendant accountable for its violations and advocate for improvements to the Proposed CD. *See* Op. & Order Granting Mots. to Intervene, US Dkt. 20 at 4 ("US Dkt. 20"); Surfrider Am. Compl.-in-Intervention, US Dkt. 33 ("US Dkt. 33") at ¶ 2; City Compl.-in-Intervention, US Dkt. 32 ("US Dkt. 32") at ¶ 2. They also moved to consolidate the Citizen Suit and Enforcement Case so that this Court could "solve common questions of law and fact in a manner more efficient and consistent than serial litigation." Mot. to Consolidate Cases, Citizen Dkt. 33 at 2.

On November 20, 2019, the Governments moved to enter a Revised CD that contained significant revisions proposed by Plaintiffs-Intervenors. *See generally* Mot. to Enter Revised CD, US Dkt. 46 ("US Dkt. 46"). These revisions included an EBP and more stringent and specific spill notification requirements, *see id.,* Exhibit 2, at 21–25, 63–71, as well as injunctive relief and civil penalties, which Plaintiffs-Intervenors sought as intervenors. *See id.* at 13–18, 32–33; *see also* US Dkt. 33 ¶ 2; *see also* US Dkt. 32 ¶ 2. The Governments also required Defendant to submit changes to its O&M Plan in response to public comments, including Plaintiffs-Intervenors' comments. US Dkt. 46 at 2. These changes included providing training requirements, identifying Defendant's standard operating procedures, and providing detailed equipment installation and monitoring plans as part of the Wastewater Process Monitoring Design. *See* US Dkt. 47-2, Ex. 1 at 6-7.

In associated filings, the Governments described the significant impact of Plaintiffs-Intervenors' advocacy, acknowledging that the EBP was "originally proposed by Surfrider" and "is not relief that the Governments would have sought if their claims had been litigated." US Dkt. 65 at 12. Defendant agreed to perform the EBP "in response to Surfrider's request and other public

comments seeking such a project" and "to be accountable to the State for stipulated penalties should it fail to satisfactorily complete the EBP." *Id.*. Regarding the details of the EBP, "the Governments shared a draft of the EBP proposal with Surfrider prior to lodging of the revised Decree, and the parties negotiated several modifications to the draft based on Surfrider's recommendations." *Id.* Second, the Governments noted that changes had been made to the spill notification provisions "at the request of the Intervenors and other public commenters." *Id.* at 11. Third, the Governments noted that changes had been made to "U. S. Steel's initial O&M Plan and Wastewater Monitoring Design—key components of the compliance measures incorporated within the Decree—in large part as a result of public comments, including those from the [Plaintiffs-]Intervenors." *Id.*

This Court entered the Revised CD on August 30, 2021. *See* Op. & Order, US Dkt. 105 ("US Dkt. 105") at 1. On September 22, 2022, this Court also found that the Revised CD "fully and adequately addressed" Plaintiffs-Intervenors' claims. Op. & Order, Citizen Dkt. 66 ("Citizen Dkt. 66") at 7.

## LEGAL STANDARDS

### I.    Entitlement to Fees

The CWA permits courts issuing a final order in any action brought pursuant to 33 U.S.C. § 1365 to "award costs of litigation . . . to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate." 33 U.S.C. § 1365(d). To cross "the statutory threshold" and demonstrate eligibility to receive these costs, a party must first demonstrate that it has prevailed or substantially prevailed, an assessment that the U.S. Supreme Court has characterized as a "generous formulation." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). A party has prevailed or substantially prevailed if it succeeds on "any significant issue in

litigation which achieves some of the benefit the parties sought." *Id*. To be a prevailing party, the success achieved must result in a "material alteration of the legal relationship of the parties," *Buckhannon v. W. Va. Dep't of Health & Human Res.,* 532 U.S. 598, 604 (2001) (internal citations omitted, that "modif[ies] the defendant's behavior in a way that directly benefits the [party]," *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992). That success need not be complete; courts may equitably award fees to "parties achieving *some success*, even if not major success." *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 (1983). Where a party has achieved "some success," a court must presume an award is appropriate, barring special circumstances that would make an award unjust. *See Animal Legal Def. Fund v. Special Memories Zoo*, 42 F.4th 700 (7th Cir. 2022).

Courts have widely recognized that consent decrees can deliver the "success" needed to establish a party as prevailing under a variety of fee-shifting statutes. *See, e.g., Balark v. City of Chicago*, 81 F.3d 658, 662 (7th Cir. 1993) ("[P]laintiffs were indeed prevailing parties due to their success in obtaining the consent decree."); *Greene v. Will*, No. 3:09CV510-PPS, 2015 WL 7459997, at *1 (N.D. Ind. Nov. 24, 2015) ("Both the default judgment against the [] defendants and the consent decree obtained against the other defendants represent relief obtained on the Class's [Resource Conservation and Recovery Act] claims 'materially alter[ing] the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff[s].'" (quoting *Farrar*, 506 U.S. at 111-12)). Indeed, the U.S. Supreme Court has explicitly held that, in addition to enforceable judgments on the merits, "court-ordered consent decrees create [a] 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." *Buckhannon*, 532 U.S. at 604.

Courts have awarded fees in similar cases, where citizen plaintiffs filed CWA suits and then made substantial improvements to a consent decree in a subsequently filed government

6

enforcement action. In *Sierra Club v. Hamilton Cnty. Bd.*, plaintiffs filed a citizen suit and then intervened in an action brought by the federal government and the State of Ohio. *See* 504 F.3d 634, 638–39 (6th Cir. 2007). The Sixth Circuit awarded fees because it was "abundantly clear on the record that without the Sierra Club's active intervention in the litigation, the less-than-adequate interim consent decree would not have been withdrawn and a fully adequate consent decree would not have been entered in its place," *Id.* at 643–44, and that "without the Sierra Club's efforts, the more comprehensive consent decree would not have come to fruition" *Id.* at 645. Thus, active intervention resulting in improvements to a consent decree has been treated as success warranting prevailing party status.

In litigation resulting in a consent decree, courts may recognize citizen plaintiffs as prevailing parties, even where the citizen plaintiffs are not parties to the consent decree itself. *See id.* at 643. In *Sierra Club v. Hamilton*, the Sixth Circuit described an argument to the contrary as "border[ing] on the absurd" because the Sierra Club had influenced the development of the consent decree in that case. *See id.* This was true even though the Sierra Club ultimately opposed entry of that consent decree. *See id.* at 639. The court in *Ne. Iowa Citizens for Clean Water v. Agriprocessors, Inc.*, similarly rejected a defendant's argument that the plaintiff could not recover fees because it was not a formal party to the final consent decree. *See* 489 F. Supp. 2d 881, 893 (N.D. Iowa 2007) (finding that this argument "ignores the reality of litigation under the CWA.").

Courts have also recognized *res judicata* as evidence of change in the legal relationship between parties and have established prevailing party status for parties whose original claims are ultimately precluded. *See, e.g., id.* In *Agriprocessors*, for example, a citizen group sued a meat processing plant, alleging CWA violations. The United States subsequently filed its own suit, the group intervened, and the court entered a consent decree between the government and the

defendant. The court awarded fees to the group, finding that the consent decree had altered the defendant's legal relationship with the group "because it wholly foreclosed [the group] from seeking relief against [the defendant] under the CWA." *Id.*. Moreover, "the Consent Decree 'directly benefit[ted]' [the group], insofar as it provided [the group] the relief it had sought all along: a substantial civil penalty and a cessation of pollution by means of an enforceable judgment." *Id.* (quoting *Sierra Club v. City of Little Rock*, 351 F.3d 840, 845 (8th Cir. 2003)). In *Atl. States Legal Found. v. Eastman Kodak Co.*, 933 F.2d 124, 128 (2d Cir. 1991), the Second Circuit found that a citizen plaintiff should be awarded fees when a subsequent consent decree in an enforcement action barred the citizen plaintiff's original claims due to *res judicata.* According to the court, "when the polluter's settlement with state authorities follows the proper commencement of a citizen suit, one can, absent contrary evidence, infer that the existence of the citizen suit was a motive for the polluter's settlement and that the citizen suit plaintiff is therefore a prevailing party." *Id.* The court noted this result also accords with the CWA's ultimate policy goals. *Id.* ("Although the case may be subject to dismissal, the function of the citizen suit—the cessation of violations of the [CWA]—will have been served.").

## II.     Reasonability of Fees and Costs

After determining the appropriateness of awarding fees, a court may consider whether the fees requested are reasonable. *Hensley*, 461 U.S. at 433. The product of counsel's reasonable hours and reasonable billing rate constitutes the "starting point," or lodestar, for establishing an appropriate award of attorneys' fees. *See id.* Courts should view the lodestar with "a strong presumption" that it "represents a 'reasonable' fee[.]" *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 565 (1986). This is because the lodestar is generally understood to capture the particularities of the litigation, including "'novelty [and] complexity of

the issues,' 'the special skill and experience of counsel,' 'the quality of representation,' and 'the results obtained.'" *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 898–900 (1984)). The lodestar figure has been awarded to prevailing parties in several cases. In *Greenfield Mills, Inc. v. Carter*, 569 F. Supp. 2d 737 (N.D. Ind. 2008), the court awarded the lodestar after adjusting for the reasonable billing hours and rate, finding no additional adjustment necessary on the basis of the extent of success. The court also awarded the lodestar after adjusting for a reasonable number of hours in *Conservation Law Found., Inc. v. Patrick*, 767 F. Supp. 2d 244, 256 (D. Mass. 2011), another CWA case. Similarly, in *Cooper v. Verifications, Inc.*, No. 1:04-CV-385-TS, 2008 WL 5332190 at *13 (N.D. Ind. Dec. 18, 2008), the court awarded the lodestar after adjusting the hours requested to a reasonable number under a fee-shifting provision.

Reasonable hours include all those that are "useful and of a type ordinarily necessary" to secure the final result obtained from litigation. *Del. Valley*, 478 U.S. at 561 (finding that comments on and counsel's work to protect the relief awarded under the consent decree was "useful" such that compensation for these activities was proper). The market value of an attorney's time generally constitutes a reasonable billing rate. *See Greenfield Mills*, 569 F. Supp. 2d at 756 (finding that attorneys "who maintain[] a contingent fee practice should submit affidavits from similarly experienced attorneys attesting to the rates they charge paying clients for similar work").

The strongest indicator of a reasonable billing rate is the market value of that attorney's time, i.e., the attorney's usual rates charged to paying clients. *See Sierra Club v. Franklin Cnty. Power of Ill., LLC*, 670 F. Supp. 2d 825, 834 (S.D. Ill. 2009) ("A reasonable hourly rate is presumed to be an attorney's actual billing rate for comparable work.") (citing *Jeffboat, LLC v. Dir., Office of Workers' Comp. Programs*, 553 F.3d 487, 490 (7th Cir. 2009)); *Mathur v. Bd. Of Trs.*, 317 F.3d 738, 743 (7th Cir. 2003)). However, where attorneys generally represent clients *pro*

9

*bono,* courts "must look to the rate charged by attorneys of similar skill and experience in the relevant community." *Atl. States Legal Found., Inc. v. Universal Tool & Stamping Co.*, 798 F. Supp. 522, 526 (N.D. Ind. 1992). In defining the "relevant community," courts account for the location in which the requisite legal services were actually available. When "a party does not find counsel readily available in that locality with whatever degree of skill may reasonably be required, it is reasonable that the party go elsewhere to find an attorney, and the court should make the allowance on the basis of the chosen attorney's billing rate." *Chrapliwy v. Uniroyal, Inc.*, 670 F.2d 760, 769 (7th Cir. 1982); *see also Sierra Club v. Franklin Cnty.*, 670 F. Supp. 2d at 834–35.

Courts begin with the lodestar, then "exclude from this initial fee calculation hours that were not reasonably expended on the litigation." *Spegon v. Catholic Bishop of Chi.*, 175 F.3d 544, 550 (7th Cir. 1998) (citing *Hensley*, 461 U.S. at 433) (internal quotations omitted). "The district court may then increase or reduce the modified lodestar amount by considering a variety of factors, the most important of which is the 'degree of success obtained.'" *Id.* (cites omitted). Courts in the Seventh Circuit have recognized that "lawyers inevitably spend time in blind alleys," *Atl. States Legal v. Universal Tool*, 798 F. Supp. at 527 (citing *Kurowski v. Krajewski*, 848 F.2d 767, 776 (7th Cir. 1988), *cert denied*, 488 U.S. 926 (1988)), and that "alternative legal theories, raised in good faith, though ultimately rejected, should not be grounds for reducing a fee." *Id.* (internal citations omitted).

The U.S. Supreme Court has stated that courts may grant fees for work external to, but in service of, the central litigation. *See e.g., Del. Valley*, 478 U.S. at 560. In *Del. Valley*, a citizen group brought suit alongside the government against the defendant, resulting in a consent decree. The defendant, however, refused to comply, resulting in the citizen group's actively participating in litigation to enforce the decree and monitoring compliance thereafter. The group sought to

10

recoup attorneys' fees, and the defendant contested fees charged for comments on the regulations the defendant submitted and participation in administrative proceedings. The Supreme Court upheld these fees, finding that counsel's work in parallel administrative proceedings "was [] necessary to the attainment of adequate relief for their client," making compensation "entirely proper." *Id.* at 560–61. In *Chrapliwy,* 670 F.2d at 763, the Seventh Circuit approved the award of fees for legal services rendered in "several court and administrative proceedings" parallel to, but separate from, the plaintiff's case in federal court, holding that the legal work in those proceedings "contributed to the ultimate termination of the Title VII action, and in that sense was within the Title VII action."

NOIs filed in citizen suits are similarly "necessary to the attainment of adequate relief" through a consent decree. An NOI is a prerequisite to filing a CWA citizen suit, *see* 33 U.S.C. § 1365(b); it is, therefore, "useful" and "necessary" to such suit, such that work on a NOI merits inclusion in a fee petition. *See* 33 U.S.C. § 1365(b)(1)(A); *see also Pub. Int. Rsch. Grp. v. Widnall*, 51 F.3d 1179, 1189 (3d Cir. 1995) (holding that time spent preparing an NOI under the CWA was compensable as it was "useful and of a type ordinarily necessary" to pursuing litigation and was a prerequisite to suit). Courts in the Seventh Circuit have acknowledged statutorily required NOIs as the beginning of litigation, analogous to filing a complaint in cases with no NOI requirement. *See e.g.*, *Greenfield Mills, Inc. v. Carter*, No. 1:00-cv-0219, 2008 U.S. Dist. LEXIS 72443, at \*8 (N.D. Ind. Sep. 23, 2008). Just as courts award attorneys' fees for pre-complaint investigation, analysis, and drafting, they may also award fees for the work necessary to prepare an NOI. *See id.* at \*8 (internal citation omitted); *see also Sierra Club v. Jackson*, No. 11-CV-315-WMC, 2013 WL 5409036, at \*15 (W.D. Wis. Sept. 25, 2013) (holding that time spent on research and filing an NOI

was "as closely bound up with the litigation process as any preliminary step save drafting the complaint itself" and was therefore compensable).

Prevailing parties receiving a fee award are entitled to fees and costs associated with litigating the claim for fees. *See Eirhart v. Libbey-Owens-Ford Co.*, 996 F.2d 846, 851 (7th Cir. 1993). In granting an award of attorneys' fees under a 42 U.S.C. § 1988 claim, the Seventh Circuit reasoned that "unless the efforts of successful plaintiffs to obtain fees are includable in a fee award, the award will be subject to potential dilution from the necessary engagement in extensive and uncompensated litigation to defend it, thus undermining the incentive system established in the Act." *Bond v. Stanton*, 630 F.2d 1231, 1236 (7th Cir. 1980).

The Seventh Circuit has recognized two methods by which a court may compensate parties for the time elapsed between the outlay of work and the award of fees: "(i) [a court] may award fees based on the attorney's rates at the time of the award (the "current rate" method) or (ii) it may award fees based on the attorney's rates at the time the services were rendered and add prejudgment interest on that amount (the "historical rate plus interest" method)." *Shott v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 338 F. 3d 736, 745 (7th Cir. 2003) (citing *In re Continental Ill. Sec. Litig.*, 961 F. 2d 566, 571 (7th Cir. 1992)). Courts award prejudgment interest as a matter of course unless there is a "sound reason not to do so." *Shott*, 338 F. 3d at (7th Cir. 2003) (citing *Gorenstein Enter., Inc. v. Quality Care—U.S.A., Inc.*, 874 F. 2d 431, 436 (7th Cir. 1989)); *Frey v. Coleman*, 903 F.3d 671, 682 (7th Cir. 2018) (noting "a presumption in favor of granting such interest") (internal citations omitted). Prejudgment interest is set at the market rate, the average of the prime rate for the relevant years. *See LaSalle Nat. Bank Ass'n v. Paloian*, 406 B.R. 299, 363 (N.D. Ill. 2009) (holding that when no interest rate is set by statute, prejudgment interest should be awarded at the market rate); *see also Frey*, 903 F.3d at 683 (instructing district courts to use the prime rate).

The CWA permits prevailing plaintiffs to seek costs of litigation including "reasonable attorneys' and expert witness fees." 33 U.S.C. § 1365(d). This Court recognizes "[t]he importance and necessity of hearing expert testimony" in CWA litigation because it "requires that both sides present technical evidence to establish the extent of damages." *Atl. States Legal v Universal Tool,* 798 F. Supp. at 528. In such technical cases, "the court must be able to hear [expert] evidence on both sides in order to arrive at a just and reasoned conclusion." *Id.* at 529. That a court finds some expert testimony more or less credible has no bearing on the value of that testimony when the court considers awarding costs. *Id.* A party may still recover expert witness fees even where that expert witness's work or testimony is ultimately not relied upon in an instant motion or in the ultimate resolution of a case. *Sierra Club v. Franklin Cnty.*, 670 F. Supp. 2d at 836 (citing *Cengr v. Fusibond Piping Sys., Inc.*, 135 F.3d 445, 455 (7th Cir. 1998)) (awarding plaintiff's expert witness costs and fees where expert's work product was "reasonably necessary" during pre-trial litigation and preparation for trial). In such a case, "[t]he proper inquiry is whether the deposition was 'reasonably necessary' to the case at the time it was taken, not whether it was used in a motion or in court." I*d.*

## ARGUMENT

### I.  Plaintiffs-Intervenors Are Substantially Prevailing Parties in this Enforcement Case.

####   A.    The Revised CD provided material injunctive relief and civil penalties sought by Plaintiffs-Intervenors and materially altered their legal relationships to Defendant.

This Court may properly award fees and costs to Plaintiffs-Intervenors because they substantially achieved their litigation goals through the entry of the Revised CD. This Court has described the Revised CD as "well-tailored to address the Facility's history of violations and technically adequate to bring about compliance in the future," US Dkt. 105 at 32. The Revised CD

imposed injunctive provisions and civil penalties, which Plaintiffs-Intervenors requested in both the Citizen Suit and this Enforcement Case. *See* Citizen Dkt. 1 ¶ 2; US Dkt. 33 ¶ 2; City Dkt. 1 ¶ 2; US Dkt. 32 ¶ 2. Demonstrating the Revised CD's material alteration on the legal relationship between Plaintiffs-Intervenors and Defendant, the Court dismissed the Citizen Suit's CWA claims with prejudice on September 22, 2022, on the basis of *res judicata*, finding that Plaintiffs-Intervenors had substantially achieved their primary goals and resolved their claims via the Revised CD. Citizen Dkt. 66 at 6-7. Thus, the Revised CD has "materially altered" the legal relationship between Plaintiffs-Intervenors and Defendant, thereby entitling Plaintiffs-Intervenors to attorneys' fees and costs. *See Buckhannon*, 532 U.S. at 604, *Balark*, 81 F.3d at 662; *Agriprocessors*, 489 F. Supp. 2d at 894; *Greene*, No. 3:09CV510-PPS, 2015 WL 7459997, at *1.

**B.     Plaintiffs-Intervenors active intervention in the Enforcement Case resulted in substantial improvements to the Revised CD.**

Plaintiffs-Intervenors fit well within the case law as substantially prevailing parties because, like the plaintiff-intervenor in *Sierra Club v. Hamilton County Board*, they actively participated in the Enforcement Case, and they succeeded in achieving a Revised CD that substantially altered the Proposed CD. Moreover, Plaintiffs-Intervenors' improvements to the Revised CD modified Defendant's behavior in a way that directly benefits them, as in *Greene v. Will*, as Defendant must implement improvements Plaintiffs-Intervenors specifically requested for the Revised CD. As noted by the Governments, Plaintiffs-Intervenors' advocacy led the Governments and Defendant to make three substantive changes from the Proposed CD: creation of an EBP, enhancement of spill notification procedures, and strengthening of Defendant's O&M Plan obligations. *See* US Dkt. 65; US Dkt. 47.

First, the Governments acknowledged that "(1) the addition of a[n] …EBP," US Dkt. 46 at 2, was "originally proposed by Surfrider[.]" *See* US Dkt. 65 at 12; Mem. in Supp. of Pls.' Mot. to

Enter Revised CD, US Dkt. 47 at 15. Plaintiffs-Intervenors proposed precisely this type of project in their April 13, 2018 letter, *see* Exhibit DD at 2, and their July 6, 2018 public comments to the USEPA, *see* US Dkt. 47-5*, 105-246.* Plaintiffs-Intervenors recommended in their public comments that the Revised CD include at least one EBP that would "require U. S. Steel to support projects aimed at improving and ensuring water quality in the vicinity of its facilities" and that would "assure local users that their lakefront is safe and adequately monitored." US Dkt. 47-5, 127, 162. This provision in the Revised CD, requiring Defendant to "monitor and report on water quality at seven locations along Lake Michigan's Indiana shoreline," was entirely absent from the Proposed CD. US Dkt. 46-2 at 18. The Governments noted in their filings that the EBP was "not relief that the Governments would have sought if their claims had been litigated." US Dkt. 65 at 12. Defendant agreed to perform the EBP "in response to Surfrider's request and other public comments seeking such a project" and "to be accountable to the State for stipulated penalties should it fail to satisfactorily complete the EBP." *Id.* Defendant also estimated that it would invest $600,000 over the course of three years to carry out the EBP. *See* US Dkt. 47 at 15. Surfrider played an active role in shaping the details of the EBP, as well, as "the Governments shared a draft of the EBP proposal with Surfrider prior to lodging of the revised Decree, and the parties negotiated several modifications to the draft based on Surfrider's recommendations." US Dkt. 65 at 12.

Second, the Governments identified "several changes . . . to strengthen and broaden the notification procedures required if U. S. Steel experiences a spill or release; and [] language clarifying that U. S. Steel must comply . . . by October 1, 2019" at the request of Plaintiffs-Intervenors and other public commenters. US Dkt. 46 at 2. These changes responded to Plaintiffs-Intervenors' criticisms in their April 13, 2018 and July 6, 2018 letters to USEPA. In their July 6,

15

2018 public comments, Plaintiffs-Intervenors recommended strengthening Defendant's spill notification obligations to ensure that Defendant would meet its obligation "to ensure that all affected parties receive adequate notice of spills, including the City of Chicago, surrounding municipalities, and Portage Lakefront-goers." US Dkt. 47-5 at 119. The Revised CD lists affected parties (including the City) that Defendant must notify in the event of a spill, *see* Dkt. US 46-2 at 64–66, and contains additional detail as to what information Defendant must provide in its notifications. *See id.* at 63. The Governments have noted that they made "several changes . . . to the spill notification provisions . . . all at the request of the Intervenors and other public commenters." US Dkt. 65 at 11.

Third, the Governments "required a number of changes to U. S. Steel's initial submissions of several key plans required under the Decree, including operation and maintenance, preventative maintenance, and wastewater process monitoring design plans -- also in large part as a result of public comments." US Dkt. 46 at 2. Similar to the spill procedures, Plaintiffs-Intervenors detailed criticisms and proposals to improve the Proposed CD regarding the O&M Plan in their July 6, 2018 public comments to USEPA. US Dkt. 47-5*, 105-246. Their proposals, requiring specific procedures for maintenance activities, equipment inspections, and reporting, are reflected in the Revised CD. US Dkt. 46-2 at 14. Moreover, Defendant amended its O&M Plan to include more than forty SOPs that the City specifically requested in its public comments. US Dkt. 47-5 at 149-72. But for Plaintiffs-Intervenors' active intervention, the Revised CD would not have included these important remedies. As in *Sierra Club v. Hamilton Cnty. Bd.*, this active intervention warrants prevailing party status, as it transformed the less-than-adequate Proposed CD into the more comprehensive Revised CD.

     **C.**     **Recognizing Plaintiffs-Intervenors as prevailing parties aligns with the purpose of the CWA.**

Finally, recognizing Plaintiffs-Intervenors as substantially prevailing parties serves the public interest and the purpose of the CWA. Courts award fees "to encourage the achievement of statutory goals" by enabling citizens to hold polluters accountable when the government does not act. *Ruckelshaus*, 463 U.S. at 706. Here, Plaintiffs-Intervenors' actions substantially served the goal of the CWA to restore and maintain the nation's waters. Plaintiffs-Intervenors properly notified the Governments of their intent to sue; when they failed to act, Plaintiffs-Intervenors filed suits seeking to remedy Defendant's numerous CWA violations. Defendant admitted to fifty-four of Surfrider's claims and many of the City's claims before the Governments filed their case; furthermore, entry of the Revised CD precluded Plaintiffs-Intervenors' CWA claims. *See* Citizen Dkt. 17  ¶¶ 78, 82, 85, 92, 96, 104, 106, 121–22; Citizen. Dkt 18 ¶¶ 72, 76, 79, 86, 90, 98, 100, 115-16. Denying citizen plaintiffs recovery of fees in such circumstances would unfairly penalize citizen plaintiffs whose litigation goals are realized in a subsequently filed government suit. Such limitations would undermine the purpose of the CWA fee-shifting provision to enable private parties to hold polluters accountable. *Del. Valley*, 478 U.S. 546, 565 (1986).

## II.    The Requested Awards of Attorneys' Fees of Plaintiffs-Intervenors Are Reasonable

As prevailing parties, Plaintiffs-Intervenors may recover fees and costs for work that is "useful and of a type ordinarily necessary" to secure the final result obtained from litigation. *Id.*. at 561. Plaintiffs-Intervenors request fees and costs for their work in this case, their work in the Citizen Suit prior to entry of the Revised CD, and their preparation of this request for fees and costs, with interest. Plaintiffs-Intervenors have arrived at a conservative but fair lodestar amount by multiplying a reasonable number of hours by reasonable rates. *See* Templeton Decl. at ¶ 18; Burke Decl. at ¶¶ 35-36. The hours spent on this work were reasonable and necessary to secure a substantially Revised CD and capture the particularities of the litigation. *See id.* at 565. This time

includes: case preparation, including obtaining and searching through hundreds of state and federal documents to uncover Defendant's CWA violations; preparation of pleadings; preparations for settlement negotiations and discovery conferences; analysis of the Proposed CD and its efficacy; drafting public comments; and continued monitoring of Defendants' environmental performance through publicly-available reports.

### A. Plaintiffs-Intervenors are entitled to fees and costs for their work in this Enforcement Case.

Plaintiffs-Intervenors' work in this Enforcement Case included drafting motions and pleadings, preparing for settlement negotiations and discovery conferences, and preparing the above-referenced public comments. Plaintiffs-Intervenors were economical in the hours spent on this work, which were necessary to achieving the outcome in the case. As described above, Plaintiffs-Intervenors' comments and participation were important to the meaningful revision of the Proposed CD and O&M plan. *See supra* at 14-17. Moreover, Plaintiffs-Intervenors' active intervention in this case was instrumental to ensuring that the resolution addressed the interests of the public (adopting the EBP, ensuring notification of affected entities, and in preventing spills), as well as their own interests, and was therefore "useful." *See Del. Valley*, 478 U.S. at 561.

### B. Plaintiffs-Intervenors are entitled to fees and costs for work in the Citizen Suit prior to the entry of the Revised CD.

Plaintiffs-Intervenors seek fees for their work in the Citizen Suit prior to the entry of the Revised CD because that work "contributed to the ultimate termination of the . . . action, and in that sense was within the . . . action." *Chrapliwy*, 670 F.2d at 763; *see also Del. Valley*, 478 U.S. at 560-61 (finding that counsel's work in parallel proceedings "was [] necessary to the attainment of adequate relief for their client," making compensation "entirely proper").

18

This work included reviewing government documents to identify violations, preparing NOIs required by law, *see* 33 U.S.C. § 1365(b)(1)(A), and preparing complaints, which were instrumental in initiating these interconnected cases and eliciting numerous admissions from Defendant before the Governments filed suit. The violations alleged by the Governments largely tracked those in the Citizen Suit Complaints. *Compare* Citizen Dkt. 1 *and* City Dkt. 1 *with* US Dkt. 1. The admissions secured by Plaintiffs-Intervenors addressed almost all of the violations alleged by the Governments. *Compare* US Dkt. 1 *with* Citizen Dkt. 17 *and* Citizen Dkt. 18. And the relief sought by the Governments largely tracked that sought by Plaintiffs-Intervenors. *Compare* Citizen Dkt. 1 *and* City Dkt. 1, *with* US Dkt. 1.

Plaintiffs-Intervenors are also entitled to fees for the motions they filed prior to the entry of the Revised CD, including their Motions to Intervene and to Consolidate. By intervening, they played an active role in obtaining adequate relief and negotiated directly with the Governments to create an adequate Revised CD. US Dkt. 65 at 12 ("the Governments shared a draft of the EBP proposal with Surfrider prior to lodging of the revised Decree, and the parties negotiated several modifications to the draft based on Surfrider's recommendations"). In trying to consolidate the Citizen Suit and the Enforcement Case, Plaintiffs-Intervenors secured statements from this Court and Defendant that the interests of Plaintiffs-Intervenors—injunctive relief and monetary penalties—would be preserved in this Enforcement Case. Op. & Order, Citizen Dkt. 37 at 6 ("The plaintiffs will not be prejudiced because their rights are protected by their intervenor status"); Def. Opp'n to Mot. to Consolidate & Second Mot. to Lift Stay, US Dkt. 37 at 13 ("Plaintiffs' rights are protected through its intervenor status in the Governments' litigation").

Finally, Plaintiffs-Intervenors are also entitled to recover the costs of their experts prior to the entry of the Revised CD, as such work that was necessary to investigate Defendant's 2017

spills and to understand their potential consequences. Exhibit N contains a list of the activities, rate and time for Surfrider's expert, Dr. Ranjit Sahu and Exhibit O is a copy of Dr. Sahu's CV. Exhibits Y and Z list the activities, rate, and time for the City's experts, CDM Smith, and Exhibit AA are copies of the CVs of the CDM Smith personnel.

**C.      Plaintiffs-Intervenors are entitled to fees and costs for time spent preparing their request for fees.**

Plaintiffs-Intervenors also request fees and costs for their work on their Rule 6(b) briefing to allow them to file the petition and this Rule 54 motion. Prevailing parties receiving a fee award are entitled to fees and costs associated with litigating the claim for fees. *See Eirhart*, 996 F.2d at 851; *Bond*, 630 F.2d at 1236. Consistent with this precedent and the purposes of the fee-shifting provision of the CWA, Plaintiffs-Intervenors request an award of fees and costs that includes their work on this petition.

**D.      Plaintiffs-Intervenors have exercised "billing judgment" to ensure that they do not request fees for any duplicative, educational, or unnecessary time.**

Plaintiffs-Intervenors have litigated these technically and procedurally complex cases with economy. Only two attorneys have worked on Surfrider's case, and typically only three to four City attorneys worked on the City's case at any given time, *see* Ex. A, Templeton Decl., at ¶ 32; Ex. R, Burke Decl., at ¶ 23. Student law clerks conducted much of Surfrider's drafting and research, time for which Surfrider requests a significantly lower rate than it would request for attorneys' time. Ex. A, Templeton Decl., at ¶ 32.

In addition, Plaintiffs-Intervenors have voluntarily reduced their time in a "good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. Surfrider has excluded any time likely to be duplicative, educational, or not directly tied to Surfrider's litigation goals. Ex. A, Templeton Decl., at ¶ 33. In total, Surfrider has excluded more

than 600 hours of student clerk time. *Id*. The City has similarly reduced its time by eliminating City attorneys who spent less than 10 hours on the litigation and excluding time for more than three City attorneys participating in meetings and/or calls, as well as the time it determined to be duplicative or inefficient. Ex. R, Burke Decl., ¶ 24.

   **E.     The requested billing rates for Plaintiffs-Intervenors are reasonable and customary among attorneys of comparable skill and experience.**

Plaintiff-Intervenors are requesting the billing rates listed in Exhibit L.

Plaintiff-Intervenors are entitled to rates that reflect the complexity of this litigation and the skill and specialization of the attorneys. Albert F. Ettinger, an environmental litigator with more than forty years of experience, states that these proceedings were "factually and technically complex" and "would require a considerable outlay of time." Ex. H, Ettinger Decl., ¶ 8. Kim E. Ferraro, an environmental litigator who teaches at Indiana University's Maurer School of Law, states that "there is no question that this case involved highly complex substantive and procedural legal questions, and presented complicated technical elements." Ex. I, Ferraro Decl., ¶ 9. *See also* Ex. K, Graham Decl., ¶ 15 (noting the "complex procedural and legal issues" in these proceedings); Ex. J, Dabertin Decl., ¶ 9 ("[a]dequate representation generally requires … specialized environmental law experience").

Robert L. Graham, an experienced environmental lawyer with approximately fifty years of litigation experience, states that the proposed rates are "reasonable … and fall below what I would expect attorneys of similar experience and reputations in environmental litigation to charge for complex environmental litigation in the Northern District of Indiana and within the Seventh Circuit." Ex. K, Graham Decl., ¶ 16. David Dabertin, a litigator in the Northern District of Indiana who has worked for the U.S. Environmental Protection Agency and the Indiana Department of

Environmental Management in this region, states that the "requested rates appear to me to be reasonable and appropriate." Ex. J, Dabertin Decl., ¶ 11.

Dabertin states further that he would "consider [this] District to be part of Chicago's legal market," *id.* ¶ 9, that he is "not aware of any environmental lawyers within his professional network in the Northern District," *id.*, and that law firms in Lake County "do not have the capacity to handle cases requiring this kind of work," which "would present an intolerable high financial risk for small firms," *id.* ¶ 10. The Clinic's offices are approximately ten miles from the Northern District of Indiana, sixteen miles from the federal courthouse in Hammond, and thirty-five miles from Defendant's facility. The City's Law Department's offices are approximately twenty-four miles from the courthouse and less than forty-three miles from Defendant's facility. It would therefore be reasonable for Surfrider to engage the Clinic to litigate on its behalf and for the City to litigate on its own behalf in this District.

To demonstrate that their requested rates are reasonable, Plaintiff-Intervenors rely in part on the Fitzpatrick Matrix issued for rates through 2023 and used by the U.S. Attorney's Office ("USAO") for the District of Columbia for civil litigation to determine uncontested attorney rates for fee petitions. *See* Ex. M, Fitzpatrick Matrix. The Fitzpatrick Matrix was "developed to provide 'a reliable assessment of fees charged for complex federal litigation in the District [of Columbia],' as the United States Court of Appeals for the District of Columbia Circuit urged. *DL v. D.C.*, 924 F.3d 585, 595 (D.C. Cir. 2019)." Ex M. at 2 n.1. The Fitzpatrick Matrix updates and replaces the prior USAO Fees Matrix. *See generally id.* at 588-94 (discussing prior use of USAO Fees Matrix and Laffey matrix in calculating rates).

While the U.S. Department of Justice has not adopted the Fitzpatrick Matrix for general use outside of the District of Columbia, this court and others throughout the country have found

helpful similar, previous matrices developed by the USAO for the District of Columbia when determining whether attorney fees are reasonable in the Northern District of Indiana. "[The USAO] matrix is still a useful resource for determining whether attorneys' fees are reasonable outside of the District of Columbia, *especially in similarly situated metropolitan areas, such as the Chicago metropolitan area where this Court is located*." *Mitchell by Mitchell*, 2020 WL 1862192 (N.D. Ind. Apr. 13, 2020) at n.1 (emphasis added) (citing *Moore v. Midland Credit Mgmt., Inc.*, 3:12-CV-166, 2012 WL 6217597, at *3 (N.D. Ind. Dec. 12, 2012)); *see also A.C. through B.C. v. Sharks Fish & Chicken, Inc.*, 2017 WL 6462340 at *2 (N.D. Ill. Aug. 4, 2017) (independently determining that counsel's requested rate was reasonable, citing the USAO Fees Matrix for support); *see also Space Data Corp. v. Hosie Rice LLP*, 2021 WL 9762990 at *5 (N.D. Cal. Nov. 1, 2021) (holding that although the USAO Fees Matrix represents attorneys' rates for D.C., other jurisdictions widely accept it); *Verbick v. Movement Tech. Co., Inc.*, 2023 WL 3801950 at *8 (S.D. Cal. June 2, 2023) (finding the requested attorney rate to be reasonable, relying in part on the USAO Fees Matrix).

In addition, Plaintiffs-Intervenors request prejudgment interests for their attorney fees and costs. Because Plaintiffs-Intervenors are seeking historical rates, they are entitled to prejudgment interest on the amount of fees that they seek. *See* discussion *infra* at 12.

**F.      Plaintiffs-Intervenors are entitled to their reasonable costs in this litigation.**

Plaintiffs-Intervenors request recompense for their reasonable expert witness costs. They required experts to analyze the Proposed CD's technical terms, identify deficiencies, and suggest measures to address the deficiencies in light of Surfrider's and the City's distinct interests, as well as the public interest. Thus, the retention of qualified experts was "reasonably necessary to the case at the time." *Sierra Club v. Franklin Cnty.*, 670 F. Supp. at 836. *See also Atl. States Legal v. Universal Tool,* 798 F. Supp. at 528. That Plaintiffs-Intervenors did not prevail in opposing entry

of the Revised CD is non-dispositive as to the award of expert fees. *See Sierra Club v. Franklin Cnty.*, 670 F. Supp. At 836.

Surfrider requests costs for Dr. Ranajit Sahu, whose billing rate was $180 per hour during the course of the litigation. *See* Ex. A, Templeton Decl., ¶¶ 50-53. Dr. Sahu provided a detailed report outlining the "general deficiencies" of the Proposed CD, which Surfrider depended on in its litigation. *See, e.g.*, Opp'n to Entry of the Proposed CD, US Dkt. 50 at 16. Moreover, this Court explicitly relied upon Dr. Sahu's Affidavit in its Order of Entry of the Consent Decree. *See* US Dkt. 105 at 36 (acknowledging that, in light of Dr. Sahu's report, "[t]he Court appreciates Surfrider's concerns," but nevertheless entering the Consent Decree); *cf. Sierra Club v. Franklin Cnty.*, 670 F. Supp. At 836 (awarding expert witness fees even though the expert's testimony and deposition were not used in the summary judgment motion resolving the case).

The City seeks to recover the costs of expert CDM Smith for reviewing US Steel's National Pollutant Discharge Elimination System ("NPDES") permit, advise the City as to what was needed to bring Defendant into CWA compliance, assist and advise the City on the drafting of its public comments on the initial proposed consent decree and Revised Consent Decree, assist the City in opposing the entry of the Revised Consent Decree, including preparing and submitting an affidavit regarding the Revised Consent Decree, and provide the City with valuable support and expertise during settlement discussions. *See* Ex. R,, Burke Decl., ¶ 39.

Plaintiffs-Intervenors' declarants regarding attorneys' fees and costs attest to the need for expert assistance, the qualifications of Dr. Sahu and CDM Smith, and the reasonableness of their rates and time billed. *See* Ex. H, Ettinger Decl. at ¶¶ 11-12; Ex. I., Ferraro Decl. at ¶¶ 14-15; *see also* Ex. K, Graham Decl. at ¶ 11 (attesting to need for experts and reasonableness of Plaintiffs-Intervenors' experts' rates). Although this Court was not persuaded that the input of Dr. Sahu or

24

CDM Smith provided grounds for rejecting the Proposed CD, Plaintiffs-Intervenors can still recover fees connected to their experts' work in this case. *See Atl. States Legal v. Universal Tool*, 798 F. Supp. at 529. Because it was "reasonably necessary" for Plaintiffs-Intervenors to retain experts to evaluate the Proposed CD in light of their specific litigation interests and because this Court relied upon these expert reports in resolving the case, this Court should grant the requested expert fees in full.

Plaintiffs-Intervenors also seek to recover other expenses. These comprise (a) $400 in initial filing fees and $170 for service and printing of the Surfrider Complaint in Surfrider's Case, and (b) $400 in initial filing fees for the City's Suit.

### G.    Summary of fees and costs.

Surfrider requests an award of attorney's fees and costs of $813,365.25 ($791,820.75 in attorney's fees for 2315.6 hours, $20,974.50 for expert fees, and $570 for other expenses). Ex. Q, Surfrider Summary of Fees and Costs. The City requests an award of attorney's fees and costs of $863,209.90 ($798,507.40 in attorneys' fees for 1,380.20 hours, $64,302.50 for expert fees and $400 for other expenses). Ex. CC, City Summary of Fees and Costs. Surfrider and the City also request legally appropriate interest on these amounts.

### CONCLUSION

For the foregoing reasons, Surfrider respectfully requests that this Court grant its request for attorneys' fees and costs in the amount of $813,365.25, plus interest, and the City respectfully requests that this Court grant its request for attorneys' fees and costs in the amount of $863,209.90, plus interest.

Dated: August 21, 2023.

Respectfully submitted,

By: ___/s/ Mark N. Templeton
Mark N. Templeton
Abrams Environmental Law Clinic
University of Chicago Law School
6020 S. University Ave.
Chicago, IL 60637
(773) 702-9611
templeton@uchicago.edu
*Counsel for The Surfrider Foundation*

By: ___/s/ Fiona A. Burke
Fiona A. Burke, Deputy Corp. Counsel
Regulatory and Contracts Division
City of Chicago Department of Law
2 N. LaSalle St., Suite 540
Chicago, IL 60602
(312) 744-6929
Fiona.Burke@cityofchicago.org
*Counsel for the City of Chicago*

**List of Exhibits and Attachments**

A.      Declaration of Mark N. Templeton

        A.1. CV of Mark N. Templeton

B.      Declaration of Robert A. Weinstock

        B.1. CV of Robert A. Weinstock

C.      Summary of Surfrider Time (by Filing)

D.      Surfrider Time – Merits Briefings (in Chronological Order)

E.      Surfrider Time – Merits Briefings (by Timekeeper)

F.      Surfrider Time – Fee Petition (in Chronological Order)

G.      Surfrider Time – Fee Petition (by Timekeeper)

H.      Declaration of Albert F. Ettinger

        H.1. CV of Albert F. Ettinger

I.      Declaration of Kim E. Ferraro

        I.1. CV of Kim E. Ferraro

J.      Declaration of David M. Dabertin

K.      Declaration of Robert L. Graham

L.      Attorneys and Legal Professionals by Years of Practice and Corresponding Rates

M.      Fitzpatrick Matrix (2023)

N.      Surfrider Expert Fees, Itemized and Sorted Chronologically

O.      CV of Surfrider's Expert Ranajit Sahu

P.      Surfrider AO 133 Bill of Costs

Q.      Summary All Surfrider Fees and Costs

R.      Declaration of Fiona Burke

    R.1.    CV of Fiona Burke

S.      Declaration of Gabrielle Sigel

    S.1.    CV of Gabrielle Sigel

T.      Summary of City of Chicago Attorney and Student Law Clerk Time by Filing

U.      Detail of City of Chicago Attorney and Student Law Clerk Time on Merit Briefings in Chronological Order

V.      Detail of City of Chicago Attorney and Student Law Clerk Time on Merit Briefings by Timekeeper

W.      Detail of City of Chicago Attorney and Student Law Clerk Time on Fee Petition in Chronological Order

X.      Detail of City of Chicago Attorney and Student Law Clerk Time on Fee Petition by Timekeeper

Y.      City of Chicago Expert Fees, Itemized in Chronological Order

Z.      City of Chicago Expert Fees, Itemized by Timekeeper

AA.     CVs of City of Chicago's Expert CDM Smith

BB.     City of Chicago's AO 133 Bill of Costs

CC.     Summary All City of Chicago's Fees and Costs

DD.     Letter from City of Chicago and Surfrider to U.S. Department of Justice and U.S. Environmental Protection Agency