**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, *et.al.* | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 2:18-cv-00127 |
| v. | ) ) | |
| U. S. STEEL CORPORATION | ) ) | |
| Defendant. | ) ) ) | |

**REPLY OF PLAINTIFFS-INTERVENORS IN SUPPORT OF THEIR
MOTION AND APPLICATIONS FOR FEES AND COSTS[1]**

Plaintiffs-Intervenors, Surfrider and the City, pursued their objectives of better notification, improved environmental performance, and a supplemental Environmentally Beneficial Project ("EBP") in an integrated, mutually reinforcing manner across (1) their Citizen Suit, (2) the Enforcement Case, and (3) their public comments. These efforts ultimately bore fruit through meaningful changes to the Proposed CD and the legal relationship between Plaintiffs-Intervenors and Defendant. Therefore, in accordance with 33 U.S.C. § 1365(d), Plaintiffs-Intervenors are substantially prevailing parties and are eligible for recovery of costs and fees.

**I. Plaintiffs-Intervenors Achieved Substantial Success and, Therefore, Are Substantially Prevailing Parties, Eligible to Recover Costs and Fees.**

As a threshold matter, Plaintiffs-Intervenors' contributions were direct and evident in three areas of the Revised CD: the EBP, the augmented notification requirements of Appendix B, and the O&M Plan. Surfrider and the City specifically requested these changes in their comments. *See*

---

[1] Capitalized terms have the same meaning as defined in Plaintiffs-Intervenors' Brief in Support of the Applications for Attorneys' Fee and Costs (DE 123).

Representative Sample of Public Comments, DE 47-5 at 105-48 (Surrider Comments); 149-72 (City Comments).[2]

Plaintiffs-Intervenors played a significant role in the $600,000 EBP. The initial Proposed CD contained a $600,000 civil penalty, but no provision for an EBP or similar project. *See* Proposed CD, DE 2-1. However, the Governments added the EBP "in response to the many public comments—including those of Surrider and the City[.]" Resp. to Comments on Proposed CD, DE 47-1 at 37.[3] Beyond participating in the public comment period, Plaintiffs-Intervenors also "submitted detailed comments to the United States" on a draft EBP the Governments provided to Plaintiffs-Intervenors under a Confidentiality Agreement. *Id.* at 8. In entering the Revised CD, this Court noted that "the Government[s] gave Surrider an opportunity to negotiate several modifications to the EBP before putting it into the decree, which they did." Op. & Order, DE 105 at 36. The finalized EBP required Defendant to use a certified third party to perform water quality sampling at seven sampling locations for a period of three years, to submit reports to IDEM and the Beach Guard notification system, and to publish results on a public-facing webpage. *See* Attach. to Mot. to Enter Revised CD, DE 46-2 at 21-25.

Plaintiffs-Intervenors also secured enhancements to the notification requirements in Appendix B of the Revised CD. *See* DE 46-2 at 63-71. Even before the lodging of the Proposed CD, the City "specifically requested that the City be added to the list of parties to be notified in the event of a spill or release[.]" DE 47-1 at 6 n.6. After the close of public comments, the Governments provided Plaintiffs-Intervenors a copy of a revised Appendix B in order for them to provide tailored feedback. *See id.* at 8. The Governments attested that they and Defendant "found

---

[2] Citations to "DE" refer to the Enforcement Case, *U.S., et. al. v. U. S. Steel Corp.*, 2:18-cv-00127. "Citizen Dkt." refers to the Citizen Suit, *Surrider Found. v. U. S. Steel Corp.*, 2:18-cv-00020.

[3] Pincites to the Response to Comments on the Proposed Consent Decree, DE 47-1, refer to the page numbers of the page as per the docket entry, rather than the Government's pagination.

several of the Intervenor comments to be helpful" and that "the revised Appendix B includes improvements proposed by the Intervenors." *Id.* As a result of Plaintiffs-Intervenors' requests, the final Appendix B included language clarifying ongoing detailed notification requirements under Defendant's existing plans, permits, and state and federal laws and regulations, *see id.* at 29; identifying the National Park Service and the City as notice recipients, *see id.* at 29, 32; closing a loophole that might have allowed Defendant summarily to change notification requirements, *see id.* at 31; and imposing procedures to ensure notification of the Local Emergency Planning Committee and/or the Porter County Sheriff's Department, *see id.* at 30.

Plaintiffs-Intervenors also helped shape the O&M Plan and Wastewater Monitoring Design required under the Revised CD. In fact, Plaintiffs-Intervenors were uniquely positioned to provide feedback as to the Wastewater Monitoring Design, because Defendant submitted these plans during the extended public comment period afforded only to Plaintiffs-Intervenors. *See id.* at 7. In line with Plaintiffs-Intervenors' comments, Defendant's final O&M Plan better specified its Standard Operating Procedures and training requirements, *see id.* at 8-10; clarified Defendant's responsibility for the operation and maintenance of sampling flow meters, *see id.* at 11; and included a detailed evaluation of "existing wastewater process monitoring, with a schedule for the completion of the improvements" in the Wastewater Monitoring Design, *see id.* at 7.

When granting fees, the Supreme Court has viewed attempts to vindicate client interests through parallel proceedings as "the type of work which is properly compensable as a cost of litigation" and has declined to limit "action[s]" to activities that occur in a courtroom. *See Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 478 U.S. 546, 557-58 (1986). In that case, a citizens' group sued Pennsylvania to compel the state to comply with the Clean Air Act ("CAA"), and the state ultimately agreed to a consent decree. Plaintiff monitored the state's

performance under the decree, submitted comments on state regulations proposed to satisfy the decree, and participated in administrative hearings relating to the decree. Plaintiff then sought attorneys' fees under the CAA for the work performed after entry of the consent decree. The CAA, like the CWA, permits courts to award "costs of litigation (including reasonable attorney . . . fees)." 42 U.S.C. § 7604(d). Pennsylvania contended—much as Defendant contends regarding the CWA in the present case—that the CAA limited awards for the costs of litigation for "'action[s] brought' under the [CAA]," and that the lower court erred in awarding attorneys' fees for activities "involv[ing] the submission of comments on draft regulations to administrative agencies." *Del. Valley*, 478 U.S. at 558. But the Supreme Court upheld the appellate court's award of attorneys' fees, finding that such work was "as necessary to the attainment of adequate relief for their client as was all of their earlier work in the courtroom." *Id*. While *Delaware Valley* presents some differences from the instant case,[4] the cases are similar in one important aspect: in order to safeguard their clients' interests, ensure an entity's compliance with federal environmental laws, and achieve their clients' litigation objectives, attorneys performed legal work outside the courtroom that complemented and supplemented judicial proceedings. *Delaware Valley*, therefore, supports awarding Plaintiffs-Intervenors fees.

Moreover, adopting Defendant's position would lead to an absurd result. It would disincentivize intervenors from contributing public comments that might lead to a more efficient resolution of the dispute. It may also discourage citizens from intervening in cases to vindicate their rights in the first place. *See generally U.S. v. Metro. Water Reclamation Dist. of Greater Chi.*,

---

[4] For example, the *Delaware Valley* plaintiff sought compliance with a consent decree, whereas, here, Plaintiffs-Intervenors sought improvements to a proposed consent decree. *See Del. Valley*, 478 U.S. at 549-553. Another difference is that the *Delaware Valley* plaintiff submitted comments regarding proposed regulations in a state administrative proceeding, whereas Plaintiffs-Intervenors submitted comments pursuant to 28 C.F.R. § 50.7(a). *See id.* at 550.

792 F. 3d 821, 825 (7th Cir. 2015) (stating rights available to CWA intervenors).

Further, the record does not support Defendant's contention that Plaintiffs-Intervenors' success flowed only from their role as public commenters. A month before the Governments lodged their Complaint and Proposed CD, Defendant admitted to dozens of CWA violations in response to Surfrider's and the City's complaints. *See* Answer to Surfrider Compl., Citizen Dkt. 17 ¶¶ 78, 82, 85, 92, 96, 104, 106, 121–22; Answer to City Compl., Citizen Dkt. 18 ¶¶ 72, 76, 79, 86, 90, 91, 95, 99, 102, 104, 115. Plaintiffs-Intervenors' Second Amended Complaints-In-Intervention in the Enforcement Action also led to key admissions. Answer to Surfrider Sec. Amd. Compl., DE 87 ¶¶ 71-76, 80-84, 87-90, 97-104, 108-109, 116-120, 123, 128; Answer to City Sec. Amd. Compl., DE 88 ¶¶ 62-67, 70-74, 77-80, 87-94, 98-99, 108-112 114, 119.In assessing the Revised CD, this Court acknowledged that these admissions weakened Defendant's legal position: "The Government Plaintiffs have a strong case against U.S. Steel given U.S. Steel already admitted to many of the violations the Government Plaintiffs and intervenors have alleged." DE 105 at 18. Further, the Governments and Plaintiffs-Intervenors remained "in communication . . . before, during, and after the public comment period for the Proposed CD," including about "substantive technical and legal issues[.]"Resp. to Mots. to Intervene, DE 17 at 7, 8.

In addition, the Governments provided Plaintiffs-Intervenors with portions of a draft Consent Decree under a Confidentiality Agreement, and incorporated feedback Plaintiffs-Intervenors provided in July 2019 after the public comment period closed. *See* DE 47-1 at 8. There is no evidence that the Governments similarly provided information to any other entities participating in the public comment process. Plaintiffs-Intervenors also remained "in active communication with [Defendant] with respect to deficiencies and inadequacies of the proposed Consent Decree," and "engaged in direct legal and technical communications with U.S. Steel,

5

including providing U.S. Steel with questions and input from a technical expert." Mot. to Intervene, DE 12 at ¶23.

In short, Plaintiffs-Intervenors' submission of comments was part and parcel of their litigation strategy. The considerable successes Plaintiffs-Intervenors achieved resulted from both their participation as public commenters and their active role as litigants.

## II. As Substantially Prevailing Parties, Surfrider and the City Are Entitled to Recover Fees Under § 1365.

Contrary to Defendant's contention, the language of § 1365(d) allows for intervenors to recover litigation costs, including attorneys' fees. The difference in fee-shifting language between the CWA and the CAA—the environmental act that served as a model for the CWA, *see* S. Rep. No. 92-414, at 3745 (1972)— is important in this regard.[5]

The CAA provides: "The court, in issuing any final order in any action *brought pursuant to subsection (a) of this section*, may award costs of litigation (including reasonable attorney and expert witness fees) to any party, whenever the court determines such award is appropriate . . . ." 42 U.S.C. § 7604(d) (emphasis added). Because subsection (a) is limited to citizen suits, *see* 42 U.S.C. § 7604(a), the fee-shifting provision pertains only to CAA citizen suits. It does not, therefore, pertain to intervention, which is addressed in subsection (b), not subsection (a). 42 U.S.C. § 7604(b)(1)(B).

The CWA, by contrast, provides: "The court, in issuing any final order in any action *brought pursuant to this section*, may award costs of litigation (including reasonable attorney and expert witness fees) to any prevailing or substantially prevailing party, whenever the court determines such award is appropriate . . . ."  33 U.S.C. § 1365(d) (emphasis added). This fee-

---

[5] Defendant raises *Meltinos v. Botts*, 1:16-cv-00386, 2017 WL 465674 (N.D. Ind. Feb. 3, 2017) and *Dyer v. Norfolk Southern Railway Co.*, 2022 WL 2168288 (N.D. June 16, 2022), but those cases focus on whether the persons who wanted to intervene in those particular situations qualified for intervention.

shifting provision is not limited to actions brought under subsection (a)—that is, citizen suits. On the contrary, it unambiguously pertains to *all* of § 1365, including subsection (b), which addresses, *inter alia*, intervention: *See* 33 U.S.C. § 1365(b)(1)(B). Given their nearly identical subsections (a), allowing for citizen suits, and (b), allowing for citizens to intervene in government actions as a matter of right, the difference between CAA's and CWA's fee-shifting provisions is significant. *See N. Haven Bd. of Educ. v. Bell*, 456 U.S. 512, 530 (1982) ("[A]lthough two statutes may be similar in language and objective, we must not fail to give effect to the differences between them.").

The legislative histories of the CAA and CWA further support this interpretation. A 1970 amendment to the CAA added the fee-shifting language. *See* Clean Air Act of 1970, Pub. L. No. 91-604, 84 Stat. 1676 (1970). Congress similarly amended the CWA, adding its fee-shifting provision, shortly thereafter in 1972. *See* Federal Water Pollution Control Act of 1972, Pub. L. No. 92-500, 86 Stat. 866 (1972). Yet the fee-shifting language differs: Congress could have—but did not—duplicate the CAA's narrower fee-shifting language when adding a similar provision to the CWA. Moreover, Congress could have but did not narrow the CWA's broader fee-shifting language in 1987, when it amended a different portion of § 1365(d) to change "to any party" to "to any prevailing or substantially prevailing party." *See* Water Quality Act of 1987, Pub. L. No. 100-4, 101 Stat. 7, 76 (1987). Congress simply has not restricted CWA intervenors to the same extent as CAA intervenors with regard to recovery of fees for intervention.

Furthermore, Congress likely intended for intervenors-of-right to recover fees, even if the plain language of § 1365 does not expressly address such fees. *See generally U.S. v. Env't Waste Control, Inc.*, 710 F. Supp. 1172, 1248 (N.D. Ind. 1989). In *Env't Waste Control*, this Court awarded fees to a citizen group that had intervened in a government enforcement case, even though

7

the provision under which the plaintiffs intervened did not include fee-shifting language. In that case, the Court considered fees under the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 ("RCRA") and the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. § 9659(i) ("CERCLA"). After reviewing the amendment history of the relevant statutes, this Court determined that "Congress intended for citizen groups intervening as a matter of right to be able to recover their costs and attorney fees," reasoning that judicial economy counsels against allowing fees if a citizen group brings a separate action, but not if they intervene.[6] *Env't Waste Control*, 710 F. Supp. at 1248. In other words, "for attorney fee purposes, an intervention under [CERCLA] may be deemed a suit brought pursuant to the citizen suit section." *Id*. Therefore, even if this Court finds that CWA's fee-shifting provision does not expressly cover intervention, *Env't Waste Control* indicates that Plaintiffs-Intervenors should, nevertheless, be awarded fees and costs.

### III. Like the Plaintiffs in *Sierra Club v. Hamilton County Bd. of County Commissioners*, Plaintiffs-Intervenors are Substantially Prevailing Parties and Should Receive Fees.

The Court should also disregard Defendant's attempts to distinguish the majority opinion in *Sierra Club v. Hamilton Cnty. Bd. of Cnty. Commissioners,* 504 F.3d 634 (6th Cir. 2007).

First, Defendant's focus on consolidation is misplaced. While Defendant asserts that Plaintiffs-Intervenors must have their citizen suits consolidated into the government enforcement action to recover fees, DE 127 at 16, this misrepresents *Sierra Club*. In considering whether the plaintiffs in that case were eligible to recover fees under § 1365, the majority notes only that

---

[6] "Given the common concern of RCRA and CERCLA with hazardous waste and the common purpose of each Act's authorization of attorney fees to promote citizen enforcement, the court concludes that Congress intended for citizen groups intervening as a matter of right to be able to recover their costs and attorney fees. STOP could have brought its own action against [defendant], based on its separate claims, in district court under [a citizen-suit provision]. Had STOP done so and prevailed, attorney fees and costs would have been available." *Env't Waste Control*, 710 F. Supp. at 1248.

8

consolidation "did not destroy the legal basis on which the Sierra Club was originally authorized to bring suit," *id.* at 642, i.e., a citizen suit under § 1365. In other words, when a plaintiff both files a citizen suit and intervenes in an enforcement action, consolidation into the enforcement action will not bar a plaintiff from recovering fees under § 1365. However, this does not mean that the corollary—that fees may be granted only if the citizen suit is consolidated—is true.

Indeed, both the Sixth Circuit and the lower district court discuss consolidation in *Sierra Club* primarily to distinguish it from *U.S. v. Maine Dep't of Transp.*, 980 F. Supp. 546 (D. Me. 1997), a case in which the plaintiff "merely intervened in a governmental civil enforcement action but never filed a citizen suit." *Sierra Club*, 504 F.3d at 642 n.4; *U.S. v. Bd. of Cnty. Commissioners of Hamilton Cnty.*, OH, No. 1:02 CV 00107, 2005 WL 2033708, at *15 (S.D. Ohio Aug. 23, 2005) ("Unlike the situation in *Maine*, the Sierra Club as noted did file [a citizen] suit pursuant to Section 1365 . . ."). While consolidation was a factor the Sixth Circuit considered, it was not dispositive. Rather, the court was more concerned with whether the plaintiff did more than intervene, i.e., whether the plaintiff separately filed a citizen suit. *Sierra Club,* 504 F.3d at 644 ("The Sierra Club began this litigation as its own independent complainant.") (citing *Hamilton Cnty.*, 2005 WL 2033708 at *15); *see also U.S. v. Tennessee*, No. 92-2062 D/A, 2008 WL 11423889, at *3 (W.D. Tenn. Mar. 14, 2008) (noting that plaintiffs in *Sierra Club* "began the litigation as an independent complainant"). Here, as in *Sierra Club*, Plaintiffs-Intervenors did more than "merely" intervene; they also filed separate, independent citizen suits. Moreover, unlike the plaintiffs in *Sierra Club*, Plaintiffs-Intervenors commenced those citizen suits *prior* to the enforcement action.

Second, Plaintiffs-Intervenors were no less "active intervenor[s]" than Sierra Club.[7] Like

---

[7] In denying Plaintiffs-Intervenors' motion to consolidate their Citizen Suit with this Enforcement Case, this Court said, "[T]he plaintiffs were granted intervenor status, which allows them to participate directly in the Governments' litigation. The plaintiffs will not be prejudiced because their rights are protected

the plaintiffs in *Sierra Club*, Plaintiffs-Intervenors brought their Citizen Suits despite ongoing negotiations between the Defendant and Governments regarding the challenged activities. *Sierra Club*, 504 F.3d at 638. As in *Sierra Club*, Plaintiffs-Intervenors also intervened and opposed entry of the Governments' Proposed CD because it failed to address adequately Plaintiffs-Intervenors' unique concerns. *Id*. at 639. In *Sierra Club*, the government responded to that opposition by withdrawing the initial consent decree and negotiating a revised agreement accounting for Sierra Club's concerns. *Id*. at 639-40. Here, although the Governments did not withdraw the initial consent decree, they did revise it substantially after considering, and incorporating specific terms addressing, Plaintiffs-Intervenors' concerns. *See* DE 47 at 8, 11, 14.

Defendant attempts to distinguish *Sierra Club* by characterizing Plaintiffs-Intervenors as "active public commenters, not 'active intervenors.'" But the successes the *Sierra Club* court awarded also included some obtained through comment submissions. *Sierra Club*, 504 F.3d at 640 (noting that suggestions for dealing with sewage in basement violations were raised in comments). Despite that, both the district court and the Sixth Circuit found that Sierra Club was a substantially prevailing party. Furthermore, because the successes Sierra Club obtained had been incorporated into the court-ordered consent decree, it had the requisite "judicial imprimatur" to grant them prevailing party status. *See Hamilton Cnty.*, 2005 WL 2033708, at *14 (describing sewage-in-basement program as a "benefit-specifically, a judicially enforceable obligation"); *see also Buckhannon Bd. & Care Home, Inc. v. W. Virginia Dep't of Health & Hum. Res.*, 532 U.S. 598, 604 (2001) ("[C]ourt-ordered consent decrees create the 'material alteration of the legal relationship of the parties' necessary to permit an award of attorney's fees." (internal citations

---

through their intervenor status." Op. & Order, Citizen Dkt. 37, at 5-6. These rights include Plaintiffs-Intervenors' rights to seek attorney fees under §1365(d).

omitted)).[8] This Court should likewise determine that Plaintiffs-Intervenors' successful advocacy efforts, which resulted in concrete additions to the Revised CD,[9] rendered them substantially prevailing parties.

Finally, a closer examination of the *Walker* case cited by Defendant shows that the Seventh Circuit would be unlikely to adopt the reasoning in the *Sierra Club* dissent. In that case, the Court acknowledged that the kind of relief obtained by Plaintiffs-Intervenors here—entry of a consent decree—rendered a litigant a prevailing party. *See Walker v. Calumet City, Ill.*, 565 F. 3d 1031, 1034 (7th Cir. 2009). Rejecting the *Sierra Club* dissent's reasoning is even more compelling where, as here, the entered consent decree contains terms beneficial to the litigant. If anything, *Walker* indicates that the Seventh Circuit is more likely to adopt the *Sierra Club* majority's reasoning.

### IV. Plaintiffs-Intervenors Are Entitled to the Requested Fees, as the Fees Are Reasonable for the Work Done and Plaintiffs-Intervenors' Accomplishments.

Here, Plaintiffs-Intervenors have requested an award of reasonable fees that "reflect the complexity of this litigation and the skill and specialization of the attorneys," DE 123-1 at 21, and have reduced their time in a "good faith effort to exclude . . . hours that are excessive, redundant, or otherwise unnecessary." *Id.* at 20 (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 434 (1983)). Defendant challenges Plaintiffs-Intervenors' requested fees on several grounds: first, because they

---

[8] Defendant incorrectly suggests that Plaintiffs-Intervenors seek to recover under the catalyst theory critiqued in *Buckhannon*. DE 127 at 3; 532 U.S. at 605–06.Plaintiffs-Intervenors do not seek recovery under this theory; rather, as explained in Plaintiffs-Intervenors' Fee Motion, *Buckhannon* and subsequent cases actually support, not undermine, Plaintiffs-Intervenors' theory of entitlement. DE 123 at 6. The *Buckhannon* court distinguished cases where *no relief* is ordered by the court and the defendant *voluntarily* ceases the challenged activity as ones where plaintiffs cannot recover attorneys' fees as a "prevailing party" because they did not obtain a "judicially sanctioned change in the legal relationship of the parties," 532 U.S. at 605, but recognized that a "court ordered consent decree[ ]" is relief that effects a "material alteration of the legal relationship of the parties," *id.* at 604. As intervenors in this case, Plaintiffs-Intervenors can seek to enforce the Revised Consent decree. See *U.S. v. Metro. Water Reclamation Dist. of Greater Chi.*, 792 F.3d 821, 825 (7th Cir. 2015).

[9] The Governments admitted that the EBP was "not relief that the Governments would have sought if their claims had been litigated." DE 65 at 12.

are supported by non-contemporaneous records; second, because Defendant believes their efforts were duplicative; and third, because they include significant amounts of student time.

First, this Court should not disregard Plaintiffs-Intervenors' time-keeping records simply because they are non-contemporaneous. Plaintiffs-Intervenors extensively detailed how they both meticulously and conservatively reconstructed their time by comparing contemporaneous records of Surfrider attorney Weinstock and student law clerks; referencing calendar entries, email correspondence, work product emails, and court filings gathered via a comprehensive electronic records search; and making conservative estimates of time spent based on this information. *See* Templeton Decl., DE 123-2, Ex. A at ¶¶ 23-26; Burke Decl., DE 123-3, Ex. R at ¶¶ 19-22, 24 (noting approximately 110 hours of unrequested time spent reconstructing time records).

Furthermore, the cases Defendant cites to challenge non-contemporaneous records are easily distinguished. For example, unlike the CWA, the relevant fee-shifting provision in *Cordell v. Colvin,* No. 1:14cv109, 2015 WL 4093344 (N.D. Ind. July 7, 2015), specifically required attorneys to submit "an itemized statement . . . *stating the actual time expended.*" *Id.* at *1 (citing Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d)(1)(B)). The case can further be distinguished because the attorney had billed "for the most part, identical hours in 28 cases for certain entries" and also had previously been warned about keeping contemporaneous time records in order to recover EAJA fees. *Id.* at *1–2.

In addition, *Lock Realty Corp. IX v. U.S. Health, LP* can be distinguished on its facts. That case involved attorneys removing items from billing records after the fact once the court barred recovery of fees for certain activities. No. 3:05-CV-715, 2015 WL 1402186 (N.D. Ind. Mar. 26, 2015). Contrary to Defendant's claim that this case supports a finding that attorneys cannot testify to the accuracy of another's fee entries, DE 127 at 22, the court found that, in that particular

instance, plaintiff failed to meet its burden "to provide objective evidence that the hours expended by each attorney and paralegal were reasonable and necessary to this litigation." *Lock Realty,* 2015 WL 1402186 at \*3–4. More specifically, the Court took issue with one of the testifying attorneys failing to attest that the revised reconstruction of time was accurate. *Id.* Here, not only did attorneys Templeton and Burke provide a detailed explanation of the reasonableness and reconstruction of attorney and student time, DE 123-2, Ex. A at ¶¶ 18-34 and DE 123-3, Ex. R. at ¶¶ 12-25, experts in CWA litigation also attested to the reasonableness of the total hours spent by Plaintiffs-Intervenors. *See, e.g.*, Ettinger Decl., DE 123-2, Ex. H at ¶¶ 8-12; Ferraro Decl., DE 123-2, Ex. I at ¶¶ 14-15. Moreover, it is common practice for one attorney to submit an affidavit on behalf of all attorneys who worked on a case. *See, e.g., Knepp v. Huffman*, No. 3:17-cv-282, 2018 WL 4680020, DE 47-48 (N.D. Ind. Sept. 4, 2019) (DeGuilio, J.).

If anything, *Lock Realty IX* supports the acceptability of reconstructed time records: the court ultimately awarded fees based on time entries made "several years after the services were rendered and recorded." 2015 WL 1402186 at \*3. Other courts have similarly found that reconstructed records can substitute contemporaneous timekeeping. *See Harper v. City of Chicago Heights*, No. 87 C 5112, 2002 WL 31010819, at \*3 (N.D. Ill. Sept. 6, 2002) (noting substantially reconstructed billing records may satisfy obligation to keep contemporaneous records); *Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.,* No. IP 96-1718-C H/K, 2002 WL 1801647, at \*3–4 (S.D. Ind. July 5, 2002) (allowing use of calendar, docket, and other records to reconstruct time records). Nor was it "disingenuous," DE 127 at 22, for Plaintiffs-Intervenors to fail to keep contemporaneous records. Unlike private law firms, the Abrams Clinic is an educational, non-profit entity that does not generally bill its nonprofit clients, DE 123-2, Ex. A at ¶ 36, and the City's lawyers represent a unit of local government and donot bill their client departments for legal

services. DE 123-3, Ex. R. at ¶ 27.

Second, the fact that Surfrider and City worked in tandem does not mean that they duplicated work or efforts. To the contrary, working jointly resulted in many efficiencies. Courts have found that using multiple attorneys "often results in a more efficient distribution of work" and can lead to lower costs. *Gautreaux v. Chi. Hous. Auth.*, 491 F.3d 649, 661 (7th Cir. 2007). For example, while Defendant points to the complaints as duplicative, Plaintiffs-Intervenors "cut and paste" allegations only where facts and/or legal positions were identical, such as descriptions of the violations and counts, avoiding the need to reinvent the wheel for common allegations. Moreover, the time records demonstrate that, typically, one Plaintiff-Intervenor led on each filing while the other reviewed. Nonetheless, it was still necessary for each Plaintiff-Intervenor to expend time to review documents to ensure that joint filings adequately represented their separate client's interests.

Third, this Court should award the full amount of law student hours requested. Courts have recognized that law student work substantially reduces the number of attorney hours necessary, bringing down overall costs. *See, e.g., Littlefield v. Mack,* 789 F. Supp. 914, 919 (N.D. Ill.), *aff'd sub nom. Littlefield v. McGuffey,* 979 F.2d 101 (7th Cir. 1992) ("[T]he legal research and writing done by the student . . . might otherwise have been done by an attorney at a much greater cost."); *Berman v. Schweiker*, 531 F. Supp. 1149, 1154–55 (N.D. Ill. 1982). Furthermore, while Defendant argues that student hours should be discounted, DE 127 at 23, Surfrider has already eliminated approximately 600 out of more than 1,800 student hours to ensure that its request reflects substantive contributions to the litigation. DE 123-2, Ex. A at ¶ 33.

Finally, it should be noted that Defendant has not objected to Plaintiffs-Intervenors' hourly rates, DE 127 at 21–23; Combined Rate Sheet, DE 123-2, Ex. L, or responded to expert opinions

14

that Plaintiffs-Intervenors' hours and rates are reasonable. Ettinger Decl., DE 123-2, Ex. H at ¶¶ 8-12; Ferraro Decl., DE 123-2, Ex. I at ¶¶ 14-15, Dabertin Decl., 123-2, Ex. J at ¶ 13, Graham Decl., DE 123-2, Ex. K, at ¶¶ 15-18. Defendant also has not challenged Plaintiffs-Intervenors' expert witness fees or other expenses. *See* DE 127 at 23–25. Any objections on these grounds, therefore, should be deemed waived: since Defendant has already briefed the issues it believes are necessary to counter the fee motion in its response, it should not be given another bite at that apple. *See* Resp. in Opp. to Def.'s Mot. to Bifurcate, DE 129 at 4–6.

Plaintiffs-Intervenors achieved substantial and meaningful successes through their intervention by obtaining changes to the Revised CD. Therefore, they should receive the full amount of fees requested. While "courts may adjust attorneys' fees downward to reflect results far below expectations . . . failing to obtain every dollar sought on behalf of his clients does not automatically mean a lawyer's fees should be reduced." *Bankston v. State of Ill.*, 60 F.3d 1249, 1256 (7th Cir. 1995). *See also Hensley,* 461 U.S. at 435 (finding that "the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit."); *Holmes v. Jeffreys*, No. 11 CV 2961, 2022 WL 17904316, at *4 (N.D. Ill. Dec. 23, 2022). Regardless, even if the court were to find duplicative or excessive hours, such hours should be reduced, not denied entirely. *See, e.g., Sommerfield v. City of Chicago,* 863 F.3d 645, 650–51 (7th Cir. 2017) (affirming reduction in award only by hours deemed unnecessary).

For the foregoing reasons and those stated in the opening brief, Surfrider and the City respectfully requests that this Court grant their requests for attorneys' fees and costs, plus interest.

Dated: October 31, 2023

Respectfully submitted,

By: ___/s/ Mark N. Templeton
Mark N. Templeton
Abrams Environmental Law Clinic
University of Chicago Law School
6020 S. University Ave.
Chicago, IL 60637
(773) 702-9611
templeton@uchicago.edu

*Counsel for The Surfrider Foundation*

By: ___/s/ Fiona A. Burke
Fiona A. Burke, Deputy Assistant
Corporation Counsel
City of Chicago Department of Law
30 N. LaSalle St., Suite 540
Chicago, IL 60602
(312) 744-6929
Fiona.Burke@cityofchicago.org

*Counsel for the City of Chicago*

16